# Exhibit A

File # : 02641810

## Cosigned Loan Request/Credit Agreement – Information Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan

Lender: Bank of America, N.A.

Loan Amount Requested: $24849.00

Deferral Period Margin: 4.65

Academic Period: 01/2005-03/2005

School: OLYMPIC COLLEGE

Repayment Option: Deferred Principal and Interest

Repayment Period Margin: 4.65      Loan Origination Fee Percentage: 8.50

### STUDENT/BORROWER INFORMATION

Borrower Name: Janelle Ditching          Home Address: 2338 Northwest Mulholland Blvd Poulsbo, WA 98370
Social Security #: ███-9633               Date of Birth: ███ 1982      Home Telephone: ███ 2104
Student Citizenship (check one box):  ▨ U.S. Citizen
                                      ■ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: ~~Gareth Taylor~~ Gareth jo          Reference Home Tel #: ███          Work Tel #:

Reference Street Address: ███ jo

Reference City/State/Zip: ███ 7

### COSIGNER INFORMATION

Cosigner Name: Pauline Ditching          Home Address: 105 Mercer St Apt 110      Seattle, WA 98109
Social Security #: ███-7653              Date of Birth: ███ 1980      Home Telephone: ███ 7882
Have you ever defaulted on a student loan or declared bankruptcy?   ▨ No   ☐ Yes
Current Employer: BLUE NILE                                              Employer Telephone: ███
Current Position: Manager          Years There: 2 Years
Years at Previous Employment:

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):  ▨ U.S. Citizen
                                       ■ Eligible Non-Citizen (Attach front & back copy of INS)
Note: Personal reference name and address cannot match that of the Borrower.

Personal Reference Name: Teresita Ditching          Reference Home Tel #: ███          Work Tel #:

Reference Street Address: ███

Reference City/State/Zip: ███

**Borrower and Cosigner: Read and, where indicated, sign and date the next page.**

# File # : 02641810

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all six (6) pages of this Loan Request/Credit Agreement BK.04-05.CSX1.10DC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend; (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos métodos de cobranza que pueden usarse contra el deudor, podrán usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de crédito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

FOR ALABAMA RESIDENTS: CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signature of Borrower  _Jenelle Ditching_                          Date _12/01/04_

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner  _Pauline Ditching_                         Date _12-01-04_

BK.04-05.CSX1.10DC.0104                                 2 of 2
PH01_BD_04-05_CSX1_F_X_DITCHING_A102641810.pdf                            BKTUDP
                                LENDER COPY

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I received the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check that disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, and the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.

(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6¾ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10¾ years after the Disbursement Date.
(d) *Residency Loan Program:* 270 days after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, *if* I am in default and the loan has been sold to TERI (see Section L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" payment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. You reserve the right to send monthly statements to either the Borrower or the Cosigner. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to, make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment

{W0188001.4}BK.04-05.CSX1.10DC.0104

amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to, make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for

example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may request (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.
9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.
10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.
11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.
12. **I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.**
13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).
14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and

my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15.  Waiver by Lender:  You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement.  This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement.  You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17.  If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.  If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original.  However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M.  DISCLOSURE NOTICES

ALL APPLICANTS:
IMPORTANT FEDERAL LAW NOTICE—

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me.  I may exercise this right by notifying the consumer credit reporting agency.  A married applicant may apply for a separate account.  If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis.  I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER.  This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT.  2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

MISSOURI RESIDENTS: **Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.  To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS:  This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms.  Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires.  In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan.  If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports.  If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family.  No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith.  I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated.  I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA: *NOTICE*: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay.  You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract.  You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt.  Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first
page of this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its
successors and assigns.
Date:  If the loan is disbursed by check, the date of the check.  If the
loan is disbursed electronically, the date the creditor transmits the
funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first
page of this Credit Agreement (to the extent advanced), plus interest
and the Loan Origination Fee set forth in this Credit Agreement.
FOR OBLIGORS COSIGNING IN VERMONT:

### NOTICE TO COSIGNER

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS
THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS
LOAN.  IF THE BORROWER DOES NOT PAY, THE LENDER HAS
A LEGAL RIGHT TO COLLECT FROM YOU.**
FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

---

**NOTICE TO COSIGNER**
You are being asked to guarantee this debt.  Think carefully before
you do.  If the borrower doesn't pay the debt, you will have to.  Be
sure you can afford to pay it if you have to, and that you want to
accept this responsibility. You may have to pay up to the full
amount of the debt if the borrower does not pay.  You may also
have to pay late fees or collection costs, which increase this
amount. The creditor can collect this debt from you without first
trying to collect from the borrower.  The creditor can use the same
collection methods against you that can be used against the
borrower, such as suing you, garnishing your wages, etc.  If this
debt is ever in default, that fact may become a part of your credit
record. This notice is not the contract that makes you liable for the
debt.

---

FROM : JIM TAYLOR
(Sent by ON FL)

CO.  FILL  DEPT  CLOCK  VCHR NO.  648
BC6  C00320 830  ..X 50K  0000484102  1

**Earnings Statement**    ADP

BLUE NILE, INC.
705 FIFTH AVE S, SUITE 900
SEATTLE, WA 98104

Period Ending:    11/25/2004
Pay Date:    11/30/2004

Taxable Marital Status:  Single
Exemptions/Allowances:
  Federal:    1
  WA:    No State Income Tax

00000000102
PAULINE DITCHING
SEATTLE, WA 98109

Social Security Number:  ▮▮▮-▮▮-7533

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 12.3300 | 88.58 | 1,093.42 | 21,599.49 |
| Overtime | 18.4950 | 2.17 | 40.13 | 545.29 |
| Float Holiday | | | | 288.00 |
| Holiday | | | | 485.28 |
| Sick | | | | 324.95 |
| Transportation | | | | 660.00 |
| Vacation | | | | 384.00 |
| | | | | 24,288.01 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Ytd 401(K) | | 663.06 |
| Vac Balance | | 54.58 |

| Deductions | Statutory | | | |
|---|---|---|---|---|
| | Federal Income Tax | -114.31 | 2,430.09 | |
| | Social Security Tax | -70.28 | 1,508.88 | |
| | Medicare Tax | -16.44 | 352.18 | |
| | **Other** | | | |
| | Check1 | -898.51 | | |
| | | | 663.06 | |
| | Transit Allow | -660.00 | | |
| | Transport Allow | 660.00 | | |

* Excluded from federal taxable wages

Your federal taxable wages this period are
$1,099.54

File #: 0264810

IF THIS [text obscured] BANK AT ADP [text obscured]

BLUE NILE, INC.
705 FIFTH AVE S, SUITE 900
SEATTLE, WA 98104

Advice number:    00000480102
Pay date:    11/30/2004

Deposited to the account of
PAULINE DITCHING

| | account number | transit ABA | amount |
|---|---|---|---|
| | 59942950 | 1250 0002 | $898.51 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

FROM : JIM TAYLOR

Student Information



TUE, NOV 30, 2004

OLYMPIC COLLEGE
STUDENT SCHEDULE

TERM: WINTER 05

DITCHING MARY-JANELLE
2338 MULLHOLLAND BLVD
POULSBO          WA 98370

Day Phone: ████2104
Evening:

Citizen: Y
Residency Status: 1 RESIDENT
Program: AAGD
Advisor: Lyons P

Vet Status: 0 NOT A VET
Fee Pay Status: 01 RESIDENT
Intent: B ACADEMIC TRANSFER
Adv Phone:              Bldg/Room:

Course ID: BIO 202        Title: GENERAL BIOLOGY
Section: 01               Item: 4050        Units: 5.0
Bldg/Room: SCI 0136       Days: MWF         Instructor: Seavy D
Start Time: 09:00 A       End Time: 09:50 A
Start Date:               End Date:
Grade:                    Fee Pay:                    Class Fee: 15.00

ADDITIONAL SCHEDULE FOR BIO 202

Bldg/Room: SCI 0112       Days: TTh         Instructor:
Start Time: 08:00 A       End Time: 09:50 A

Course ID: CHEM 150       Title: GENERAL INORGANIC CHEM
Section: 01               Item: 4121        Units: 5.0
Bldg/Room: SCI 0137       Days: DAILY       Instructor: Kishurtz R
Start Time: 11:00 A       End Time: 11:50 A
Start Date:               End Date:
Grade:                    Fee Pay:                    Class Fee:

Course ID: CHEM 151       Title: GENERAL INORGANIC LAB
Section: 02               Item: 4125        Units: 1.0
Bldg/Room: SCI 0137       Days: Th          Instructor: Kishurtz R
Start Time: 01:00 P       End Time: 03:50 P
Start Date:               End Date:
Grade:                    Fee Pay:                    Class Fee: 15.00

TOTAL CREDITS   11.0

TUITION CHARGES ..   709.00        PRIOR PAYMENTS ...   799.00
FEE CHARGES.......    90.00        COVERED BY FINAID      .00
                    --------                           --------
TOTAL CHARGES ....   799.00        TOTAL PAYMENTS....   799.00
                                   TOTAL DUE ........      .00

Return to Main Menu

WINTER : Next quarter enrolled
* I also plan to go spring quarter,
then transfer to a 4-year college
to get my degree (Biology / Pre-Med)

File #: 02641810

FROM : JIM TAYLOR
Student Information

TUE, NOV 30, 2004

**OLYMPIC COLLEGE**
**STUDENT SCHEDULE**

**TERM: FALL 04**

DITCHING MARY-JANELLE
2338 MULHOLLAND BLVD
POULSBO          WA 98370

Day Phone: (360) ███-2104
Evening:

Citizen: Y
Residency Status: 1 RESIDENT
Program: AASD
Advisor: Lyons P

Vet Status: 0 NOT A VET
Fee Pay Status: 01 RESIDENT
Intent: B ACADEMIC TRANSFER
Adv Phone:          Bldg/Room:

| | | | |
|---|---|---|---|
| Course ID: PHYS 114 | Title: | GENERAL PHYSICS | |
| Section: 02 | Item: 4911 | Units: | 6.0 |
| Bldg/Room: SCI 0138 | Days: DAILY | Instructor: Hess L | |
| Start Time: 10:00 A | End Time: 10:50 A | | |
| Start Date: | End Date: | | |
| Grade: | Fee Pay: | Class Fee: | 15.00 |

ADDITIONAL SCHEDULE FOR PHYS 114

| | | |
|---|---|---|
| Bldg/Room: SCI 0114 | Days: M | Instructor: Hess L |
| Start Time: 03:00 P | End Time: 03:50 P | |

| | | | |
|---|---|---|---|
| Course ID: CHEM 140 | Title: | GENERAL INORGANIC CHEM | |
| Section: 02 | Item: 4123 | Units: | 5.0 |
| Bldg/Room: SCI 0137 | Days: DAILY | Instructor: Dial J | |
| Start Time: 11:00 A | End Time: 11:50 A | | |
| Start Date: | End Date: | | |
| Grade: | Fee Pay: | Class Fee: | |

| | | | |
|---|---|---|---|
| Course ID: CHEM 141 | Title: | GENERAL INORGANIC LAB | |
| Section: 03 | Item: 4128 | Units: | 1.0 |
| Bldg/Room: SCI 0137 | Days: Th | Instructor: Flowers B | |
| Start Time: 01:00 P | End Time: 03:50 P | | |
| Start Date: | End Date: | | |
| Grade: | Fee Pay: | Class Fee: | 15.00 |

| | | | |
|---|---|---|---|
| Course ID: BIO 201 | Title: | GENERAL BIOLOGY | |
| Section: 03 | Item: 4064 | Units: | 5.0 |
| Bldg/Room: SCI 0159 | Days: TTh | Instructor: Eleuria A | |
| Start Time: 05:00 P | End Time: 06:20 P | | |
| Start Date: | End Date: | | |
| Grade: | Fee Pay: | Class Fee: | 15.00 |

ADDITIONAL SCHEDULE FOR BIO 201

| | | |
|---|---|---|
| Bldg/Room: SCI 0106 | Days: MW | Instructor: |
| Start Time: 05:00 P | End Time: 06:50 P | |

TOTAL CREDITS   17.0

| | | | |
|---|---|---|---|
| TUITION CHARGES .. | 802.00 | PRIOR PAYMENTS ... | 907.00 |
| FEE CHARGES....... | 105.00 | COVERED BY FINAID | .00 |
| TOTAL CHARGES .... | 907.00 | TOTAL PAYMENTS.... | 907.00 |
| | | TOTAL DUE ........ | .00 |

Return to Main Menu

*Fall: current quarter enrolled*

*File #: 02641810*

## NOTE DISCLOSURE STATEMENT

$ __27,157.38__

__07641810__
Loan No.

Borrower(s)   __JANELLE DITCHING__
              __PAULINE DITCHING__

Student:   __JANELLE DITCHING__
Date:      __December 21, 2004__

JANELLE DITCHING
█████████ MULHOLLAND BLVD
POULSBO , WA  98370

Lender Name and Address:
__BANK OF AMERICA, N.A.__
__600 WILSHIRE BLVD, 4TH FLOOR__
__LOS ANGELES, CA 90017__

This disclosure statement relates to your Loan Note disbursed on   __December 21, 2004__
Because your loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following
information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| __7.163__ % | $ __25,438.20__ | $ __24,849.00__ | $ __50,287.20__ |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ __209.53__ | On the 20th day of each month beginning on 1/2006 |
| | | |
| | | |
| | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of
the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of
The Wall Street Journal on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of
The Wall Street Journal on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the
"Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months
immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase
the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while
principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the
Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the
amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example,
assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and
interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12%
on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by
$ 91.01, and your monthly principal and interest payments would increase by $ 9.37.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational
institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If
you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to
compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the
scheduled date, any security interest and prepayment refunds and penalties.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)         $ _____27,157.38__

Itemization of Amount Financed
Amount paid to JANELLE DITCHING and              $ _____
Amount paid to PAULINE DITCHING                  $ _____24,849.00__
Total Amount Financed                                                          $ _____24,849.00__

Itemization of Prepaid Finance Charge
     Origination Fee                             $ _____2,308.38__
     Total Prepaid Finance Charge(s)                                           $ _____2,308.38__

FRAJ 043 97J6  22        BKTUDP  Education Maximizer UG Loan        File Copy

&lt;DOCUMENT&gt;
&lt;TYPE&gt;EX-10.15
&lt;SEQUENCE&gt;16
&lt;FILENAME&gt;ncslt-ex10_15.txt
&lt;DESCRIPTION&gt;POOL SUPPLEMENT - BANK OF AMERICA
&lt;TEXT&gt;

EXHIBIT 10.15

&lt;PAGE&gt;

## 2005-1 POOL SUPPLEMENT

This Pool Supplement (the "SUPPLEMENT") is entered into pursuant to and forms a part of that certain (i) Note Purchase Agreement dated as of April 30, 2001 and (ii) Note Purchase Agreement dated as of June 30, 2003, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "AGREEMENT"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "PROGRAM LENDER"). This Supplement is dated as of February 23, 2005. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

ARTICLE 1:  PURCHASE AND SALE.

In consideration of the Minimum Purchase Price set forth in SCHEDULE 1 attached hereto, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "DEPOSITOR"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached SCHEDULE 2 (the "TRANSFERRED BANK OF AMERICA LOANS") along with all of the Program Lender's rights under the Guaranty Agreement relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2005-1 (the "TRUST"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

ARTICLE 2:  PRICE.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 1 attached hereto.

ARTICLE 3:  REPRESENTATIONS AND WARRANTIES.

3.01. BY PROGRAM LENDER.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02. BY DEPOSITOR.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

<PAGE>

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

ARTICLE 4:   CROSS RECEIPT.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

ARTICLE 5:   ASSIGNMENT OF ORIGINATION, GUARANTY AND SERVICING RIGHTS.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in SCHEDULE 2, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

<PAGE>

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:  /s/ John A. Hupalo
-------------------------------------------
     Name: John A. Hupalo
     Title: Executive Vice President

BANK OF AMERICA, N.A.

By: /s/ Kathy Cannon
-------------------------------------------
     Name: Kathy Cannon
     Title: Senior Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By:      GATE Holdings, Inc., Member

     By:  /S/ Stephen Anbinder
     -------------------------------------------
          Name: Stephen Anbinder
          Title: President

<PAGE>

SCHEDULE 1

[**]

| Bank of America Loan Programs |||||
|---|---|---|---|---|
| **Final Sale Roster** |||||
| **Social Security Number** | **Sequence** | **Int Rate Margin** | **Borrower Fee** | **Gross Principal Purchased** |
| ███-9633 | 1 | 4.65% | 8.50% | $27,157.38 |

| National Collegiate Student Loan Trust 2005-1 ||||
|---|---|---|---|
| | | | **Closing Date: February 23, 2005** |
| **Unpaid Interest Purchased** | **Total Interest Capitalized** | **Total Disbursed Amount** | **Last Disbursement Date** |
| $314.09 | $0.00 | $27,157.38 | 12/21/2004 |

```
<DOCUMENT>
<TYPE>EX-10.4
<SEQUENCE>9
<FILENAME>ncslt-ex10_4.txt
<DESCRIPTION>DEPOSIT AND SALE AGREEMENT
<TEXT>
```

EXHIBIT 10.4

```
<PAGE>
```

DEPOSIT AND SALE AGREEMENT
THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1

This Deposit and Sale Agreement (the "SALE AGREEMENT"), dated as of February 23, 2005, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "SELLER"), and The National Collegiate Student Loan Trust 2005-1, as purchaser (the "PURCHASER"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

ARTICLE I
TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on SCHEDULE A attached hereto (the "TRANSFERRED STUDENT LOANS").

ARTICLE II
DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of February 1, 2005 between U.S. Bank National Association (the "INDENTURE TRUSTEE") and the Purchaser.

ARTICLE III
SALE AND PURCHASE

Section 3.01. SALE OF LOANS. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02. ASSIGNMENT OF RIGHTS. The Seller hereby assigns to the

Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on SCHEDULE A attached hereto and the related Student Loan Purchase Agreements listed on SCHEDULE B attached hereto.

Section 3.03. SETTLEMENT OF THE PAYMENT. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller. In addition, the Purchaser will also issue the Class A-5 Notes and Class A-IO Notes to the Seller pursuant to the Indenture.

<PAGE>

Section 3.04. ASSISTANCE BY SELLER. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

ARTICLE IV
REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01. GENERAL. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02. LOAN REPRESENTATIONS. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on SCHEDULE B attached hereto.

Section 4.03. COVENANTS. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

ARTICLE V
PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc. and Delaware Trust Company, National Association (the "OWNER TRUSTEE") promptly, in writing,

upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

<div align="center">

ARTICLE VI
LIABILITY OF SELLER; INDEMNITIES

</div>

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

<div align="center">

2

</div>

<PAGE>

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents of the Purchaser and the Owner Trustee from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

<div align="center">

ARTICLE VII
MERGER OR CONSOLIDATION OF, OR ASSUMPTION
OF THE OBLIGATIONS OF SELLER

</div>

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; PROVIDED, HOWEVER, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction

of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "CERTIFICATES") (the "CERTIFICATEHOLDERS", together with the Noteholders, the "SECURITYHOLDERS") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

3

<PAGE>

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

ARTICLE VIII
LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

ARTICLE IX
SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the

Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

ARTICLE X
COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

4

<PAGE>

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

The National Collegiate Student Loan Trust 2005-1
c/o Delaware Trust Company, National Association,
as Owner Trustee
300 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Attention: Mr. Sterling C. Correia

If to the Seller, to:

The National Collegiate Funding LLC
c/o First Marblehead Data Services, Inc.
230 Park Avenue, 10th Floor
New York, NY 10169
Attention: Mr. Rob Baron

with a copy to:

First Marblehead Corporation
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand-delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this

5

<PAGE>

Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance

thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement, the Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

ARTICLE XII
ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

ARTICLE XIII
GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES, HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

ARTICLE XIV
LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Delaware Trust Company, National Association, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Delaware Trust

6

<PAGE>

Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

<PAGE>

        IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement
to be duly executed by their respective officers hereunto duly authorized, as of
the day and year first above written.

                              THE NATIONAL COLLEGIATE FUNDING LLC,
                              as Seller


                              By: GATE Holdings, Inc., Member


                              By: /s/ Stephen Anbinder
                                 ------------------------------------
                                 Name:  Stephen Anbinder
                                 Title: President



                              THE NATIONAL COLLEGIATE STUDENT LOAN
                              TRUST 2005-1, as Purchaser

                              By: Delaware Trust Company, National
                                  Association, not in its
                                  individual capacity but solely
                                  as Owner Trustee


                              By: /s/ Sterling C. Correia
                                 ------------------------------------
                                 Name:  Sterling C. Correia
                                 Title: Vice President

<PAGE>


                            SCHEDULE A
                          Pool Supplements


Each of the following Pool Supplements was entered into by and among The First
Marblehead Corporation, The National Collegiate Funding LLC and:

o       Bank of America, N.A., dated February 23, 2005, for loans that were
        originated under Bank of America's BAGEL Loan Program, CEDU Loan
        Program, Direct to Consumer Loan Program and ISLP Loan Program.
o       Bank One, N.A., dated February 23, 2005, for loans that were originated
        under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan
        Program and M&T REFERRAL Loan Program.
o       Charter One Bank, N.A., dated February 23, 2005, for loans that were
        originated under the following Charter One programs: AAA Southern New
        England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma

Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Edfinancial Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, START Education Loan Program, Southwest Loan Program and WAMU Alternative Student Loan Program.

- Chase Manhattan Bank USA, N.A., dated February 23, 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated February 23, 2005, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, DTC Loan Program, Navy Federal Referral Loan Program, Xanthus Loan Program and Pennsylvania State University Undergraduate and Continuing Education Loan Program.
- The Huntington National Bank, dated February 23, 2005, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated February 23, 2005, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.
- National City Bank, dated February 23, 2005, for loans that were originated under National City Bank's National City Loan Program.
- PNC Bank, dated February 23, 2005, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.
- SunTrust Bank, dated February 23, 2005, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

<PAGE>

SCHEDULE B
Student Loan Purchase Agreements

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were

originated under Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's Edfinancial Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

<PAGE>

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's START Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Pennsylvania State University Undergraduate and Continuing Education Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

</TEXT>
</DOCUMENT>

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT: LT05  ORIG BAL: 27,157.38
BOND ISSUE: NCT20051    PD AHEAD:    STATUS: ACTIVE    CURR BAL:     0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 07/06/12 | 07/06/12 | 5003A | 35.00CR | 0.00 | 0.00 |
| 2 | | 07/02/12 | 07/02/12 | 1030A | 39,475.24CR | 15.40 | 0.00 |
| 3 | | 06/29/12 | | 2601A | 5.00 | 159.51 | 38,278.57 |
| 4 | | 05/29/12 | | 2601A | 5.00 | 154.36 | 38,278.57 |
| 5 | | 04/29/12 | | 2601A | 5.00 | 159.45 | 38,278.57 |
| 6 | | 03/29/12 | | 2601A | 5.00 | 148.61 | 38,278.57 |
| 7 | | 02/29/12 | | 2601A | 5.00 | 158.86 | 38,278.57 |
| 8 | | 01/29/12 | | 2601A | 5.00 | 158.75 | 38,278.57 |
| 9 | | 12/29/11 | | 2601A | 5.00 | 106.81 | 38,278.57 |
| 10 | | 12/08/11 | 12/08/11 | 1010C | 56.06CR | 45.77 | 38,278.57 |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT: LT05 ORIG BAL:  27,157.38
BOND ISSUE: NCT20051   PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00
```

|    | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|----|-----|----------|----------|-------|----------|---------|-----------|
| 1  |     | 11/29/11 |          | 2601A | 2.80     | 142.41  | 38,278.57 |
| 2  |     | 11/01/11 | 11/01/11 | 7001A | 0.00     | 19.81   | 38,278.57 |
| 3  |     | 10/28/11 | 10/28/11 | 1010C | 43.95CR  | 178.39  | 37,274.82 |
| 4  |     | 09/22/11 | 09/23/11 | 1010C | 100.00CR | 777.98  | 37,274.82 |
| 5  |     | 04/19/11 | 04/20/11 | 1010C | 356.40CR | 105.29  | 37,274.82 |
| 6  |     | 03/29/11 |          | 2601A | 5.00     | 140.39  | 37,274.82 |
| 7  |     | 03/01/11 |          | 2601A | 4.20     | 105.29  | 37,274.82 |
| 8  |     | 02/08/11 | 02/09/11 | 1010C | 305.75CR | 50.14   | 37,274.82 |
| 9  |     | 01/29/11 |          | 2601A | 5.00     | 155.56  | 37,274.82 |
| 10 |     | 12/29/10 |          | 2601A | 5.00     | 257.80  | 37,274.82 |

```
      SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI                    CUST ACCT: LT05  ORIG BAL:  27,157.38
BOND ISSUE: NCT20051   PD AHEAD:    STATUS: ACTIVE      CURR BAL:      0.00

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |         | 11/08/10 | 11/09/10 | 1010C | 331.36CR | 50.57  | 37,274.82 |
| 2 |         | 10/29/10 |          | 2601A |   5.00   | 111.26 | 37,291.16 |
| 3 |         | 10/07/10 | 10/08/10 | 1010C | 200.00CR | 40.43  | 37,291.16 |
| 4 |         | 09/29/10 |          | 2601A |   5.00   | 156.45 | 37,291.16 |
| 5 |         | 08/29/10 |          | 2601A |   5.00   | 141.31 | 37,291.16 |
| 6 |         | 08/01/10 | 08/02/10 | 7001A |   0.00   | 100.11 | 37,291.16 |
| 7 |         | 07/12/10 | 07/13/10 | 1010C | 183.15CR | 267.68 | 36,984.28 |
| 8 |         | 05/19/10 | 05/20/10 | 1010C | 516.48CR | 390.94 | 36,984.28 |
| 9 |         | 03/01/10 |          | 2601A |   5.00   | 242.78 | 36,984.28 |
| 10 |        | 01/11/10 | 01/11/10 | 1010C | 516.48CR | 64.97  | 36,984.28 |

        SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT: LT05  ORIG BAL:  27,157.38
BOND ISSUE: NCT20051   PD AHEAD:    STATUS: ACTIVE      CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 12/29/09 |  | 2601A | 5.00 | 75.44 | 37,236.86 |
| 2 |  | 12/14/09 | 12/15/09 | 1010C | 258.69CR | 75.44 | 37,236.86 |
| 3 |  | 11/29/09 |  | 2601A | 5.00 | 296.74 | 37,236.86 |
| 4 |  | 10/01/09 | 10/01/09 | 7001A | 0.00 | 1,147.51 | 37,236.86 |
| 5 |  | 03/01/09 | 03/02/09 | 7001A | 0.00 | 1,090.84 | 36,089.35 |
| 6 |  | 09/23/08 | 09/24/08 | 1010C | 310.00CR | 75.89 | 34,591.10 |
| 7 |  | 09/12/08 |  | 2601A | 5.00 | 636.52 | 34,591.10 |
| 8 |  | 06/14/08 | 06/16/08 | 7001A | 0.00 | 568.87 | 34,591.10 |
| 9 |  | 04/01/08 | 04/01/08 | 7001A | 0.00 | 798.78 | 34,022.23 |
| 10 |  | 01/01/08 | 01/02/08 | 7001A | 0.00 | 826.38 | 33,223.45 |

```
    SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                CUST ACCT: LT05  ORIG BAL:  27,157.38
BOND ISSUE: NCT20051   PD AHEAD:   STATUS: ACTIVE     CURR BAL:      0.00

|  | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|---|---|---|---|---|---|---|
|  | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 |  | 10/01/07 | 11/20/07 | 7001A | 0.00 | 52.91 | 32,397.07 |
| 2 |  | 09/25/07 | 09/26/07 | 1010C | 320.44CR | 379.20 | 32,285.40 |
| 3 |  | 08/13/07 | 08/13/07 | 1010C | 320.44CR | 247.48 | 32,285.40 |
| 4 |  | 07/16/07 | 07/17/07 | 1010C | 320.44CR | 133.34 | 32,358.36 |
| 5 |  | 07/01/07 | 11/20/07 | 7001A | 0.00 | 148.91 | 32,545.46 |
| 6 |  | 06/14/07 | 06/15/07 | 1010C | 320.44CR | 648.21 | 32,068.78 |
| 7 |  | 04/01/07 | 11/20/07 | 7001A | 0.00 | 770.20 | 32,068.78 |
| 8 |  | 01/01/07 | 11/20/07 | 7001A | 0.00 | 472.94 | 31,298.58 |
| 9 |  | 11/06/06 | 11/07/06 | 1010C | 279.13CR | 110.39 | 30,825.64 |
| 10 |  | 10/24/06 | 10/25/06 | 1010C | 289.13CR | 195.89 | 30,994.38 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT: LT05  ORIG BAL: 27,157.38
BOND ISSUE: NCT20051   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 10/01/06 | 11/20/07 | 7001A | 0.00 | 737.45 | 31,087.62 |
| 2 | | 07/01/06 | 11/20/07 | 7001A | 0.00 | 679.08 | 30,350.17 |
| 3 | | 04/01/06 | 11/20/07 | 7001A | 0.00 | 446.57 | 29,671.09 |
| 4 | | 01/27/06 | 01/30/06 | 1010C | 248.22CR | 298.96 | 29,173.78 |
| 5 | | 12/14/05 | 11/20/07 | 7001A | 0.00 | 475.35 | 29,173.78 |
| 6 | | 10/01/05 | 11/20/07 | 7001A | 0.00 | 544.98 | 28,698.43 |
| 7 | | 07/01/05 | 07/05/05 | 7001A | 0.00 | 497.81 | 28,153.45 |
| 8 | | 04/01/05 | 04/04/05 | 7001A | 0.00 | 184.17 | 27,655.64 |
| 9 | | 02/23/05 | 02/23/05 | 0390A | 27,471.47 | 0.00 | 27,157.38 |
| 10 | | 02/23/05 | 02/23/05 | 0395A | 27,471.47CR | 314.09 | 0.00 |

```
     SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

   ITS2C*****9633;;                AES/PA        VTAM NAFE      TSX2D
   DATE 07/14/16 12:19:46      LOAN FINANCIAL ACTIVITY         PAGE  7 OF  7
```

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/21/04 LN SEQ: 0001  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT: LT05  ORIG BAL: 27,157.38
BOND ISSUE: NCT20051   PD AHEAD:   STATUS: ACTIVE      CURR BAL:       0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/21/04 | 12/21/04 | 0101A | 27,157.38 | 0.00 | 27,157.38 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS31*****9633;              AES/PA      VTAM NAFE      TSX31
DATE 07/14/16 12:19:53 DEFERMENT/FORBEARANCE LOAN DETAIL

BORROWER SSN: ***-**-9633 NAME: JANELLE Z DITCHING
1ST DISB DATE: 12/21/04   OWNER: NCT                 LOAN PGM: ALPLN
LOAN SEQ: 001        GUARANTOR: TERI


                                                      TOTL
                  BEGIN     END     GRACE   CAP  DAYS DAYS MOS    CERT
        DEFER/FORB TYP DATE     DATE    END DATE IND  USED LEFT USED   DATE
   _    F - ADMINISTRV 05 01 11 10 31 11          Y   184 UNL  11.1 09 22 11
   _    F - ADMINISTRV 03 01 10 07 31 10          Y   153 UNL  11.1 07 13 10
   _    F - GEN/TEMP   04 01 09 09 30 09          Y   183    1 12.0 04 02 09
   _    F - GEN/TEMP   09 01 08 02 28 09          Y   181    1 12.0 09 25 08
   _    D - SCHL FULL  01 03 06 06 13 08          Y   893  933 29.4 10 06 08

   _                   __ __ __ __ __ __          _
   _                   __ __ __ __ __ __          _




    F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN
```

BORROWER SSN ***-**-9633    NAME JANELLE Z DITCHING

```
         SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE      PGM       OWNER
  1  I  L        286.51     2    196   02/13/12 12/21/04 ALPLN       NCT
  2  ***********************************************************************
  3  ***********************************************************************
  4  I  RP       100.01     3    199   11/13/11 12/21/04 ALPLN       NCT
  5  ***********************************************************************
  6  ***********************************************************************
  7  ***********************************************************************
  8  I  TG       136.45     4    203   07/13/11 12/21/04 ALPLN       NCT
  9  ***********************************************************************
 10  ***********************************************************************
 11  I  L        263.16     2    214   08/13/10 12/21/04 ALPLN       NCT
 12  I  TG       131.59     4    214   08/13/10 12/21/04 ALPLN       NCT
```

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN ***-**-9633    NAME JANELLE Z DITCHING

```
        SCHED    INSTALL   REPAY   REPAY   1ST DUE 1ST DISB    LOAN
SEL STA TYPE    AMOUNT    LVLS    TERM    DATE    DATE         PGM       OWNER
  1  I   L       258.39      2     223   11/13/09 12/21/04  ALPLN       NCT
  2  **********************************************************************
  3  **********************************************************************
  4  **********************************************************************
  5  **********************************************************************
  6  I   L       288.56      2     230   04/13/09 12/21/04  ALPLN       NCT
  7  **********************************************************************
  8  **********************************************************************
  9  **********************************************************************
 10  **********************************************************************
 11  I   L       299.49      2     237   08/27/08 12/21/04  ALPLN       NCT
 12  I   L       320.44      2     222   06/14/07 12/21/04  ALPLN       NCT
```

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN ***-**-9633    NAME JANELLE Z DITCHING

```
        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE      PGM      OWNER
 1  I    L      284.13     2     231   09/26/06 12/21/04 ALPLN     NCT
 2  I    L      248.22     2     239   01/26/06 12/21/04 ALPLN     NCT
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
 0  ****************************************************************
```

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

# Loan Payment History Report
## Date: 2017-12-21

| | | | |
|---|---|---|---|
| Account Number: | ███ 9633/001-001000 | | |
| Social Security Number: | ███ 9633 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | DITCHING, JANELLE | Officer Code: | 777051 |
| Birth Date: | 1982-███ | School: | OLYMPIC COLLEGE |
| Address 1: | C/O WOTIPKA RICHARD J | Program Year: | 2004-05 |
| Address 2: | 707 EAST HARRISON | | |
| City: | SEATTLE | Variable Rate Code: | FU LIBOR |
| State: | WA | Interest Rate: | 0.00% |
| Zip Code: | 98102 | | |
| Cosigner Name: | DITCHING, PAULINE | | |
| Social Security Number: | ███ 7553 | | |
| Address 1: | 2338 NW MULHOLLAND BLVD | | |
| Address 2: | | | |
| City: | POULSBO | | |
| State: | WA | | |
| Zip Code: | 98370-9560 | | |
| | | Last Payment Date: | 2011-12-08 |
| | | Last Payment Amount: | $56.06 |
| Contract Date: | 2004-12-21 | Last Interest Date: | 2017-12-21 |
| Vendor Placement Date: | 2017-11-21 | Accrued Interest: | $10,557.57 |
| Charge Off Date: | 2012-07-02 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $39,475.24 | Net Interest: | $10,557.57 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Current Principal: | $39,475.24 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2004-12-21 | Net Costs: | $0.00 |
| Disbursement Amount: | $27,157.38 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2012-07-31 | 00:01 | 82 | $39,475.24 @ 4.890 / 07/02/2012 - 07/31/2012 | $152.95 |
| System | 2012-08-01 | 00:01 | 82 | $39,475.24 @ 4.890 / 07/31/2012 - 08/01/2012 | $5.27 |
| System | 2012-08-31 | 00:01 | 82 | $39,475.24 @ 4.890 / 08/01/2012 - 08/31/2012 | $158.22 |
| System | 2012-09-04 | 00:01 | 82 | $39,475.24 @ 4.890 / 08/31/2012 - 09/04/2012 | $21.10 |
| System | 2012-09-30 | 00:01 | 82 | $39,475.24 @ 4.890 / 09/04/2012 - 09/30/2012 | $137.13 |
| System | 2012-10-01 | 00:01 | 82 | $39,475.24 @ 4.890 / 09/30/2012 - 10/01/2012 | $5.27 |
| System | 2012-10-31 | 00:01 | 82 | $39,475.24 @ 4.890 / 10/01/2012 - 10/31/2012 | $158.22 |
| System | 2012-11-13 | 00:01 | 82 | $39,475.24 @ 4.890 / 10/31/2012 - 11/13/2012 | $68.56 |

| System | 2012-12-03 | 00:01 | 82 | $39,475.24 @ 4.890 / 11/13/2012 - 12/03/2012 | $105.48 |
|--------|------------|-------|----|----------------------------------------------|---------|
| System | 2012-12-11 | 00:01 | 82 | $39,475.24 @ 4.890 / 12/03/2012 - 12/11/2012 | $42.19 |
| System | 2012-12-31 | 00:01 | 82 | $39,475.24 @ 4.890 / 12/11/2012 - 12/31/2012 | $105.48 |
| System | 2013-01-03 | 00:01 | 82 | $39,475.24 @ 4.890 / 12/31/2012 - 01/03/2013 | $15.87 |
| System | 2013-01-31 | 00:01 | 82 | $39,475.24 @ 4.860 / 01/03/2013 - 01/31/2013 | $147.17 |
| System | 2013-02-01 | 00:01 | 82 | $39,475.24 @ 4.860 / 01/31/2013 - 02/01/2013 | $5.26 |
| System | 2013-02-06 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/01/2013 - 02/06/2013 | $26.28 |
| System | 2013-02-08 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/06/2013 - 02/08/2013 | $10.51 |
| System | 2013-02-11 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/08/2013 - 02/11/2013 | $15.77 |
| System | 2013-02-12 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/11/2013 - 02/12/2013 | $5.26 |
| System | 2013-02-13 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/12/2013 - 02/13/2013 | $5.26 |
| System | 2013-02-18 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/13/2013 - 02/18/2013 | $26.28 |
| System | 2013-02-28 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/18/2013 - 02/28/2013 | $52.56 |
| System | 2013-03-31 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/28/2013 - 03/31/2013 | $162.94 |
| System | 2013-04-09 | 00:01 | 82 | $39,475.24 @ 4.860 / 03/31/2013 - 04/09/2013 | $47.31 |
| System | 2013-04-30 | 00:01 | 82 | $39,475.24 @ 4.850 / 04/09/2013 - 04/30/2013 | $110.15 |
| System | 2013-05-31 | 00:01 | 82 | $39,475.24 @ 4.850 / 04/30/2013 - 05/31/2013 | $162.61 |
| System | 2013-06-30 | 00:01 | 82 | $39,475.24 @ 4.850 / 05/31/2013 - 06/30/2013 | $157.36 |
| System | 2013-07-31 | 00:01 | 82 | $39,475.24 @ 4.850 / 06/30/2013 - 07/31/2013 | $162.61 |
| System | 2013-08-02 | 00:01 | 82 | $39,475.24 @ 4.850 / 07/31/2013 - 08/02/2013 | $10.49 |
| System | 2013-08-31 | 00:01 | 82 | $39,475.24 @ 4.850 / 08/02/2013 - 08/31/2013 | $152.11 |
| System | 2013-09-30 | 00:01 | 82 | $39,475.24 @ 4.850 / 08/31/2013 - 09/30/2013 | $157.36 |
| System | 2013-10-09 | 00:01 | 82 | $39,475.24 @ 4.850 / 09/30/2013 - 10/09/2013 | $47.21 |
| System | 2013-10-31 | 00:01 | 82 | $39,475.24 @ 4.840 / 10/09/2013 - 10/31/2013 | $115.16 |
| System | 2013-11-30 | 00:01 | 82 | $39,475.24 @ 4.840 / 10/31/2013 - 11/30/2013 | $157.04 |
| System | 2013-12-31 | 00:01 | 82 | $39,475.24 @ 4.840 / 11/30/2013 - 12/31/2013 | $162.27 |
| System | 2014-01-06 | 00:01 | 82 | $39,475.24 @ 4.840 / 12/31/2013 - 01/06/2014 | $31.40 |
| System | 2014-01-31 | 00:01 | 82 | $39,475.24 @ 4.820 / 01/06/2014 - 01/31/2014 | $130.32 |
| System | 2014-02-04 | 00:01 | 82 | $39,475.24 @ 4.820 / 01/31/2014 - 02/04/2014 | $20.85 |
| System | 2014-02-28 | 00:01 | 82 | $39,475.24 @ 4.820 / 02/04/2014 - 02/28/2014 | $125.11 |
| System | 2014-04-03 | 00:01 | 82 | $39,475.24 @ 4.820 / 02/28/2014 - 04/03/2014 | $177.24 |
| System | 2014-05-21 | 00:01 | 82 | $39,475.24 @ 4.810 / 04/03/2014 - 05/21/2014 | $249.70 |
| System | 2014-07-03 | 00:01 | 82 | $39,475.24 @ 4.810 / 05/21/2014 - 07/03/2014 | $223.69 |
| System | 2014-07-31 | 00:01 | 82 | $39,475.24 @ 4.800 / 07/03/2014 - 07/31/2014 | $145.36 |
| System | 2014-08-01 | 00:01 | 82 | $39,475.24 @ 4.800 / 07/31/2014 - 08/01/2014 | $5.19 |
| System | 2014-08-07 | 00:01 | 82 | $39,475.24 @ 4.805 / 08/01/2014 - 08/07/2014 | $31.18 |
| System | 2014-08-31 | 00:01 | 82 | $39,475.24 @ 4.805 / 08/07/2014 - 08/31/2014 | $124.72 |
| System | 2014-09-02 | 00:01 | 82 | $39,475.24 @ 4.805 / 08/31/2014 - 09/02/2014 | $10.39 |
| System | 2014-09-30 | 00:01 | 82 | $39,475.24 @ 4.800 / 09/02/2014 - 09/30/2014 | $145.36 |
| System | 2014-10-01 | 00:01 | 82 | $39,475.24 @ 4.800 / 09/30/2014 - 10/01/2014 | $5.19 |
| System | 2014-10-21 | 00:00 | 34 | SVS OF PROCESS | $57.50 |
| System | 2014-10-21 | 00:01 | 82 | $39,475.24 @ 4.800 / 10/01/2014 - 10/21/2014 | $103.83 |
| System | 2014-10-31 | 00:01 | 82 | $39,475.24 @ 4.800 / 10/21/2014 - 10/31/2014 | $51.91 |
| System | 2014-11-04 | 00:01 | 82 | $39,475.24 @ 4.800 / 10/31/2014 - 11/04/2014 | $20.77 |
| System | 2014-11-30 | 00:01 | 82 | $39,475.24 @ 4.810 / 11/04/2014 - 11/30/2014 | $135.25 |
| System | 2014-12-31 | 00:01 | 82 | $39,475.24 @ 4.810 / 11/30/2014 - 12/31/2014 | $161.26 |
| System | 2015-01-31 | 00:01 | 82 | $39,475.24 @ 4.810 / 12/31/2014 - 01/31/2015 | $161.26 |
| System | 2015-02-28 | 00:01 | 82 | $39,475.24 @ 4.810 / 01/31/2015 - 02/28/2015 | $145.66 |

| System | 2015-03-31 | 00:01 | 82 | $39,475.24 @ 4.810 / 02/28/2015 - 03/31/2015 | $161.26 |
|--------|------------|-------|----|-----------------------------------------------|---------|
| System | 2015-04-02 | 00:01 | 82 | $39,475.24 @ 4.810 / 03/31/2015 - 04/02/2015 | $10.40 |
| System | 2015-04-30 | 00:01 | 82 | $39,475.24 @ 4.820 / 04/02/2015 - 04/30/2015 | $145.96 |
| System | 2015-05-31 | 00:01 | 82 | $39,475.24 @ 4.820 / 04/30/2015 - 05/31/2015 | $161.60 |
| System | 2015-06-30 | 00:01 | 82 | $39,475.24 @ 4.820 / 05/31/2015 - 06/30/2015 | $156.39 |
| System | 2015-07-01 | 00:01 | 82 | $39,475.24 @ 4.820 / 06/30/2015 - 07/01/2015 | $5.21 |
| System | 2015-07-31 | 00:01 | 82 | $39,475.24 @ 4.830 / 07/01/2015 - 07/31/2015 | $156.71 |
| System | 2015-08-31 | 00:01 | 82 | $39,475.24 @ 4.830 / 07/31/2015 - 08/31/2015 | $161.94 |
| System | 2015-09-30 | 00:01 | 82 | $39,475.24 @ 4.830 / 08/31/2015 - 09/30/2015 | $156.71 |
| System | 2015-10-01 | 00:01 | 82 | $39,475.24 @ 4.830 / 09/30/2015 - 10/01/2015 | $5.22 |
| System | 2015-11-04 | 00:01 | 82 | $39,475.24 @ 4.840 / 10/01/2015 - 11/04/2015 | $177.97 |
| System | 2015-12-11 | 00:00 | 34 | SVS OF PROCESS | $67.50 |
| System | 2015-12-11 | 00:01 | 82 | $39,475.24 @ 4.840 / 11/04/2015 - 12/11/2015 | $193.68 |
| System | 2015-12-31 | 00:01 | 82 | $39,475.24 @ 4.840 / 12/11/2015 - 12/31/2015 | $104.69 |
| System | 2016-01-01 | 00:01 | 82 | $39,475.24 @ 4.840 / 12/31/2015 - 01/01/2016 | $5.22 |
| System | 2016-01-31 | 00:01 | 82 | $39,475.24 @ 4.860 / 01/01/2016 - 01/31/2016 | $157.25 |
| System | 2016-02-29 | 00:01 | 82 | $39,475.24 @ 4.860 / 01/31/2016 - 02/29/2016 | $152.01 |
| System | 2016-03-31 | 00:01 | 82 | $39,475.24 @ 4.860 / 02/29/2016 - 03/31/2016 | $162.50 |
| System | 2016-04-01 | 00:01 | 82 | $39,475.24 @ 4.860 / 03/31/2016 - 04/01/2016 | $5.24 |
| System | 2016-04-30 | 00:01 | 82 | $39,475.24 @ 5.080 / 04/01/2016 - 04/30/2016 | $158.89 |
| System | 2016-05-31 | 00:01 | 82 | $39,475.24 @ 5.080 / 04/30/2016 - 05/31/2016 | $169.85 |
| System | 2016-06-30 | 00:01 | 82 | $39,475.24 @ 5.080 / 05/31/2016 - 06/30/2016 | $164.37 |
| System | 2016-07-01 | 00:01 | 82 | $39,475.24 @ 5.080 / 06/30/2016 - 07/01/2016 | $5.48 |
| System | 2016-08-01 | 00:01 | 82 | $39,475.24 @ 5.120 / 07/01/2016 - 08/01/2016 | $171.19 |
| System | 2016-08-31 | 00:01 | 82 | $39,475.24 @ 5.120 / 08/01/2016 - 08/31/2016 | $165.67 |
| System | 2016-09-30 | 00:01 | 82 | $39,475.24 @ 5.120 / 08/31/2016 - 09/30/2016 | $165.67 |
| System | 2016-10-01 | 00:01 | 82 | $39,475.24 @ 5.120 / 09/30/2016 - 10/01/2016 | $5.52 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-26.36 |
| System | 2016-10-08 | 00:01 | 82 | $39,475.24 @ 5.150 / 10/01/2016 - 10/08/2016 | $38.88 |
| System | 2016-10-31 | 00:01 | 82 | $39,475.24 @ 5.150 / 10/08/2016 - 10/31/2016 | $127.76 |
| System | 2016-11-30 | 00:01 | 82 | $39,475.24 @ 5.150 / 10/31/2016 - 11/30/2016 | $166.64 |
| System | 2016-12-31 | 00:01 | 82 | $39,475.24 @ 5.150 / 11/30/2016 - 12/31/2016 | $172.19 |
| System | 2017-01-01 | 00:01 | 82 | $39,475.24 @ 5.150 / 12/31/2016 - 01/01/2017 | $5.57 |
| System | 2017-01-31 | 00:01 | 82 | $39,475.24 @ 5.210 / 01/01/2017 - 01/31/2017 | $169.04 |
| System | 2017-02-28 | 00:01 | 82 | $39,475.24 @ 5.210 / 01/31/2017 - 02/28/2017 | $157.77 |
| System | 2017-03-31 | 00:01 | 82 | $39,475.24 @ 5.210 / 02/28/2017 - 03/31/2017 | $174.68 |
| System | 2017-04-01 | 00:00 | 39 | COST ADJUSTMENT | $-125.00 |
| System | 2017-04-01 | 00:01 | 82 | $39,475.24 @ 5.210 / 03/31/2017 - 04/01/2017 | $5.63 |
| System | 2017-04-30 | 00:01 | 82 | $39,475.24 @ 5.430 / 04/01/2017 - 04/30/2017 | $170.31 |
| System | 2017-05-31 | 00:01 | 82 | $39,475.24 @ 5.430 / 04/30/2017 - 05/31/2017 | $182.05 |
| System | 2017-06-30 | 00:01 | 82 | $39,475.24 @ 5.430 / 05/31/2017 - 06/30/2017 | $176.18 |
| System | 2017-07-01 | 00:01 | 82 | $39,475.24 @ 5.430 / 06/30/2017 - 07/01/2017 | $5.87 |
| System | 2017-07-21 | 00:00 | 33 | FILE SUMMONS&COM | $240.40 |
| System | 2017-07-21 | 00:01 | 82 | $39,475.24 @ 5.660 / 07/01/2017 - 07/21/2017 | $122.43 |
| System | 2017-07-31 | 00:01 | 82 | $39,475.24 @ 5.660 / 07/21/2017 - 07/31/2017 | $61.21 |
| System | 2017-08-31 | 00:01 | 82 | $39,475.24 @ 5.660 / 07/31/2017 - 08/31/2017 | $189.76 |
| System | 2017-09-30 | 00:01 | 82 | $39,475.24 @ 5.660 / 08/31/2017 - 09/30/2017 | $183.64 |
| System | 2017-10-01 | 00:01 | 82 | $39,475.24 @ 5.660 / 09/30/2017 - 10/01/2017 | $6.12 |

| System | 2017-10-31 | 00:01 | 82 | $39,475.24 @ 5.880 / 10/01/2017 - 10/31/2017 | $190.78 |
|--------|------------|-------|----|---------------------------------------------|---------|
| System | 2017-11-21 | 00:00 | 44 | Interest Adjustment | $-50.87 |
| System | 2017-11-21 | 00:01 | 82 | $39,475.24 @ 5.880 / 10/31/2017 - 11/21/2017 | $133.55 |
| System | 2017-12-06 | 00:00 | 33 | MOTION FEES | $30.40 |
| System | 2017-12-06 | 00:01 | 82 | $39,475.24 @ 0.000 / 11/21/2017 - 12/06/2017 | $0.00 |
| System | 2017-12-21 | 00:01 | 82 | $39,475.24 @ 0.000 / 12/06/2017 - 12/21/2017 | $0.00 |



National™
Collegiate
Trust

SEPTEMBER 27, 2011

American Education Services
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

```
#BWNDHKB
#B088 4900 0609 27L2#
JANELLE Z DITCHING
        12TH AVE NW
SEATTLE WA  98117-2231
```

ACCT NUMBER: ████1915

---

**PLEASE READ THE FOLLOWING INFORMATION CAREFULLY
TO DETERMINE WHETHER YOU NEED TO TAKE ACTION.**

---

**WHY WE ARE CONTACTING YOU**
To remind you that the forbearance period on your loan(s) will soon expire.

**WHAT THIS MEANS TO YOU**
Your loan(s) listed on the reverse side of this letter will be due for payments within 60 days of the forbearance end date.

**WHAT ACTIONS YOU NEED TO TAKE**

| If you: | Then: |
|---|---|
| Had been using our automatic payment service, Direct Debit... | ...this service will automatically resume and your payments will be withdrawn from your bank account. Please notify us immediately if you no longer wish your payments to be automatically debited, or if your bank account information has changed during the forbearance period. |
| Had NOT been using our automatic payment service, Direct Debit... | ...no action is necessary. You will be sent a billing statement 20 days prior to your due date. |
| If you had been making payments on an Income Based Repayment schedule before the application of the forbearance and feel you qualify for a Partial Financial Hardship payment... | ...please call our office to request the necessary forms or download them at www.aessuccess.org. |



TSXF5:PS06BF601
████1915 ████1915 MR        00010112690004098

## LOAN INFORMATION

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | FORBEARANCE END DATE |
|---|---|---|---|
| ALPLN | NCT | 12/21/2004 | 10/31/2011 |



National™
Collegiate
Trust

MAY 14, 2012

American Education Services
Harrisburg, PA 17130-0001
Toll-free 1-800-649-6034 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

#BWNDHKB
#B088 4900 0605 14L1#
JANELLE Z DITCHING
███ 12TH AVE NW
SEATTLE WA  98117-2231

ACCT NUMBER: ████ 1915

DEAR JANELLE Z DITCHING:

You are now at least 150 days past due on your student loan. In accordance with the terms of your loan agreement, the entire principal balance and accrued interest will soon be due in full unless you act. If you pay the TOTAL PAST DUE AMOUNT FOR ALL LOANS by the DUE DATE (each listed on <u>reverse of this letter</u>), you may continue with your contract. If you do not pay the total amount due by this date, we may exercise our rights under the law.

You may be obligated to pay reasonable costs of collection, including but not limited to court costs, attorney fees and collection agency fees as allowable under applicable law, and the account(s) will be sent to a recovery agency and reviewed for legal action.

To avoid these steps, please make your payment through one of the following methods:

**MAKE PAYMENTS THROUGH THE MAIL:**
☐ Include your account number, 31 5907 1915, on the check or money order.
☐ Send the payment to:    American Education Services
                                        Harrisburg, PA 17130-0001

**MAKE PAYMENTS ONLINE AT:**          www.aesSuccess.org

**MAKE TELEPHONE PAYMENTS AT:**    1-800-649-6034

If you are unable to pay the full delinquent amount, please contact our office at 1-800-649-6034. Our representatives may be able to assist you in bringing the account(s) current. Our business hours are Monday through Friday, from 7:30 a.m., to 9 p.m., ET.

American Education Services
COLLECTIONS DEPARTMENT

P.S. Call 1-800-649-6034 to avoid additional collection calls and further damage to your credit history. We may have helpful ways to bring the account(s) current.



TDXGN3:PS09BFDLP3
████ 1915 ████ 1915 MR         00115121330008998

## LOAN INFORMATION

| LOAN SEQ | LOAN PROGRAM | DISBURSEMENT DATE | LENDER NAME | DUE DATE | LATE FEE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| 0001 | ALPLN | 12/21/2004 | BANK OF AMERICA | 06/11/2012 | $25.00 | $39,372.37 |

TOTAL DUE FOR ALL LOANS (including late fees)  $80,471.90