# Exhibit C

Exhibit C

Loan ID # 04565172

## NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

Education Maximizer Undergraduate Loan                              Academic Period: 01/2007-11/2007

Lender: Bank of America, N.A.            School: UNIVERSITY OF WASHINGTON

Loan Amount Requested: $28450.00        Repayment Option: Full Deferral

Deferral Period Margin: 4               Repayment Period Margin: 4        Loan Origination Fee Percentage: 5.50

**STUDENT BORROWER INFORMATION (Must be at least 16 years )**
Janelle 40  N.E. Art #20 SEATTLE
Borrower Name: Janelle Ditching          Home Address: 14381 North East Subvenue 20 Glade, WA 98125
Social Security #: ████9633               Date of Birth: ████ 1982     Home Telephone: ████0840
Borrower Citizenship (check one box): ☐ U.S. Citizen  ☒ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Angela Taylor        Reference Home Tel #: ████        Work Tel #:

Reference Street Address: ████

Reference City/State/Zip: ████

**COSIGNER INFORMATION (Must be at least 18 years of age)**
SEATTLE
Cosigner Name: Pauline Ditching          Home Address: ████ 64th Street Glade, WA 98107
Social Security #: ████7553               Date of Birth: ████1980     Home Telephone: ████5096
Have you ever defaulted on a student loan or declared bankruptcy? ☒ No  ☐ Yes
Current Employer: LYONS PAPERS                             Employer Telephone: ████
Current Position: Other Project Coordinator 40
Years at Previous Employment: 6 Years    Years There: 2 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box): ☒ U.S. Citizen   ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Ditching 40
Personal Reference Name: Teresita Ditching       Reference Home Tel #: ████ 40     Work Tel #:

Reference Street Address: ████

Reference City/State/Zip: ████
40

**Borrower and Cosigner: Read and, where indicated, sign and date the next page.**

BK.06-07.CSX1.10DC.0206            **LENDER COPY**
PN01_BD_06-07_CSX1_F_X_DITCHING_A104565172.pdf                              **BKJUDP**

loan ID # 04565172

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement BK.06-07.CSX1.10DC.0206 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) my fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligation will be subject to, Article 9 of the Uniform Commercial Code.

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

NOTICE TO COSIGNER (Traducción en inglés Se Requiere Por La Ley):
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

AVISO PARA EL FIADOR (Spanish Translation Required by Law):
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsibilidad de la deuda.

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS – NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signature of Borrower _____  Date __12 / 11 - 06__

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _____  Date __12 - 11 - 06__

BK.06-07.CSX1.10DC.0206      LENDER COPY
PN01_BD_06-07_CSX1_F_X_DITCHING_A104565172.pdf

BKJUDP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the student Borrower without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check that disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for this Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will begin 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest

payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5 ½- year maximum.

(b) *Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last

day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, **if** I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

### E. TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 on the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid any late fees, I will also owe additional amounts for those late

fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

### F. LOAN ORIGINATION FEE:

If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

### G. RIGHT TO PREPAY:

I have the right to prepay all or any part of my loan at any time without penalty.

### H. FORBEARANCE:

If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

### I. WHOLE LOAN DUE:

To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

### J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

### K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against

the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the student Borrower fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M. DISCLOSURE NOTICES

> ALL APPLICANTS:
> IMPORTANT FEDERAL LAW NOTICE—
>
> *Important information about procedures for opening a new account:*

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for student Borrowers (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:

*NOTICE*: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the Borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.

Kind of Debt: Education loan.

Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.

**FOR OBLIGORS COSIGNING IN VERMONT:**

*NOTICE TO COSIGNER*

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**FOR OBLIGORS COSIGNING IN WEST VIRGINIA:**

> **NOTICE TO COSIGNER**
> You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the Borrower. The creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

# CERTIFICATION OF ENROLLMENT



**UNIVERSITY OF WASHINGTON**
**OFFICE OF THE REGISTRAR**
Registration and Transcript Office
Room 225 Schmitz Hall, Box 355660
Seattle, Washington 98195-5660

12/08/06
MAS199

Certification for: DITCHING, MARY-JANE Z
SSN: ***-**-****

OE School Code: 003798

Current Enrollment Status

| | | |
|---|---|---|
| Enrolled full time | 9/27/06 - | 6/08/07 |

Enrollment History

| | | |
|---|---|---|
| Enrolled half time | 1/03/06 - | 3/17/06 |
| Enrolled full time | 3/27/06 - | 6/09/06 |

Loan ID# 04565172

This certification is valid only when it bears the signature of the
Registrar. The enrollment information presented here is current as
of the date printed on this certification. If you require
additional information, please call the Registration Office at
(206) 543-8580.

MARY-JANE Z DITCHING

This official certification does not require a raised seal.



*(signed)* TODD MILDON

Todd Mildon
University Registrar

UoW 1053 (Rev. 12/04)     Page: 4/8

DOCUMENT IS VOID IF ARTIFICIAL WATERMARK AND TAN WIRE WOVE PATTERN ARE NOT ON BACK

In accordance with the Family Educational Rights and Privacy Act of 1974, information from this record may not be released to a third party without written consent of the student.

Date: 12/11/2006 3:10:43 PM     From: 2066161870



Check No. 12507
7553

Current Year-to-Date

Emp. ID 1050

PACIFIC PIER, INC. - LED PAPER USA.-PAYROLL ACCOUNT
PAULINE Z DITCHING

|  | Current | Year-to-Date |
|---|---|---|
| Reg. Earnings | 750.00 | 15,455.11 |
| FIT | 41.84- | 1,403.19- |
| Soc Sec Tax | 46.50- | 1,020.17- |
| Medicare Tax | 10.88- | 238.65- |
| Net Pay | 651.58 | 13,793.10 |

loan ID# 0456512


**WASHINGTON**

**Student Personal Services | Logout**

- Registration      · Grade Inquiry      · DARS - Degree Audit      · Financial Aid Status      · Tuition Statement
- Class Schedule    · Unofficial Transcript    · Change of Address      · Direct Deposit Transfer    · Credit Card Paym
- Visual Schedule    · Official Transcript      · Insurance/Optional Charges    · Short-Term Loan

# Class Schedule - Winter 2007

Select a different quarter: Autumn

**Joan ID# 04565172**

**Prepared for:** Mary-Jane Z Ditching

**Date prepared:** December 12, 2006

| SLN | Course | Type | Credits | Title | Meetings | | | | Ii |
|------|---------|------|---------|--------|------|------|----------|------------|----|
| | | | | | Days | Time | Location | Instructor | |
| 11004 | BIOL 355 A | LC | 3.0 | FNDATION MOL CEL BIO | MW | 930-1020 | HCK 132 | CATTOLICO,R | Re St |
| 11006 | BIOL 355 AB | QZ | 0.0 | FNDATION MOL CEL BIO | Th | 1230- 120 | HCK 344 | CATTOLICO,R | |
| 17898 | STAT 311 A | LC | 5.0 | ELEMNTS STAT METHOD | MWF | 230- 320 | GWN 301 | CARDOSO,T | Re St |
| 17902 | STAT 311 AD | QZ | 0.0 | ELEMNTS STAT METHOD | TTh | 930-1020 | THO 101 | | |
| 13466 | GENOME 371 A | LC | 5.0 | INTRO GENETICS | TF | 1030-1220 | GNOM S060 | BREWER,B | Re St |
| 13473 | GENOME 371 AG | QZ | 0.0 | INTRO GENETICS | Th | 200- 320 | HCK 246 | PAUL,A | |
| | Total credits: 13.0 | | | | | | | | |

Display Textbooks                    Display Final Exam Schedule


To protect your privacy and prevent unauthorized use,  close ALL of
your web browser windows and web-enabled applications when you
finish.


Office of the Registrar
regoff@u.washington.edu
December 12, 2006

PAULINE Z DITCHING

| | Current | Year-to-Date |
|---|---|---|
| Reg. Earnings | 1,291.67 | 28,583.41 |
| FIT | 120.63- | 2,605.74 |
| Soc Sec Tax | 80.08- | 1,772.09 |
| Medicare Tax | 18.73- | 414.50 |
| Deductions | 24.80- | 124.00 |
| Net Pay | 1,047.43 | 23,667.08 |

11-16-06-11-30-06  Check No.  12095
Emp. ID 1050                    7553

| | Current | Year-to-Date |
|---|---|---|
| BALANCED PROGR | 24.80- | 124.00- |

12095

One Thousand
Forty Seven Dollars and Forty Three Cents

12-01-06          $1,047.43

PAULINE Z DITCHING
▇▇▇ NW 64TH STREET
SEATTLE, WA 98107

From: 2086161870          Page: 8/8          Date: 12/11/2006 3:10:44 PM

loan ID# 0456505172

## NOTE DISCLOSURE STATEMENT

$ __30,105.82__

__04565172__
Loan No.

Borrower(s)  __JANELLE DITCHING__
__PAULINE DITCHING__

Student:  __JANELLE DITCHING__
Date:  __December 19, 2006__

JANELLE DITCHING
█████ 30TH AVE NE APT20
SEATTLE, WA 98125  USA

Lender Name and Address:
__BANK OF AMERICA, N.A.__
__600 WILSHIRE BLVD, 4TH FLOOR__
__LOS ANGELES, CA 90017__

This disclosure statement relates to your Loan Note disbursed on      December 19, 2006  .
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following
information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 9.963 % | $ 49,756.40 | $ 28,450.00 | $ 78,206.40 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due | |
|---|---|---|---|
| 240 | $ 325.86 | On the  20th day of each month beginning | 10/2008 |
| | | | |
| | | | |
| | | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of
the loan if the index rate increases. The index is (check one):

☐ **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of
The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of
The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the
"Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3)
calendar months immediately preceding the first day of each calendar quarter.

☒ **LIBOR Index Adjusted Monthly** - The one-month London Interbank Offered Rate published in the "Money Rates"
section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase
the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while
principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the
Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the
amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example,
assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and
interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12%
on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by
$91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If
you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage
Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the
scheduled date, any security interest and prepayment refunds and penalties.

| | | |
|---|---|---|
| Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) | | $ __30,105.82__ |
| | | |
| Itemization of Amount Financed | | |
| Amount paid to  JANELLE DITCHING  and | $ ____ | |
| Amount paid to  PAULINE DITCHING | $ __28,450.00__ | |
| Total Amount Financed | | $ __28,450.00__ |
| | | |
| Itemization of Prepaid Finance Charge | | |
| Origination Fee | $ __1,655.82__ | |
| Total Prepaid Finance Charge(s) | | $ __1,655.82__ |

THE FACE OF THIS CHECK IS PRINTED RED - THE BACK CONTAINS A SIMULATED WATERMARK



**TERI**
31 St. James Avenue, 6th Floor
Boston, Massachusetts 02116

51-44/119

Bank of America
Hartford, CT

NO. 00204390

Void after 90 days from date

DATE
12/19/2006

AMOUNT
$****28,450.00

**PAY** *TWENTY-EIGHT THOUSAND FOUR HUNDRED FIFTY AND .00 DOLLARS*

TO
THE
ORDER
OF

**JANELLE DITCHING & PAULINE DITCHING**
█████30TH AVE NE APT20
SEATTLE
WA 98125

⑆00204390⑆ ████0445⑉ ████0160⑆ ⑈0002845000⑈



WARNING THE BACK OF THIS CHECK CONTAINS A
SIMULATED WATERMARK HOLD AT 45° ANGLE TO VIEW

X

By signing above agree to repay this education loan as per
credit agreement

DO NOT WRITE STAMP OR SIGN BELOW THIS LINE

EXP
ISS
# 2860

WAOL DITCHM
EXP
IS
BORROWER # 650WA
1/0

FEDERAL RESERVE BOARD OF GOVERNORS

Document security includes a simulated watermark, microprinting, and toner adhesion.

0014786

Exhibit 99.18

**Confidential Materials Omitted and Filed Separately with the Securities and Exchange Commission.**
**Asterisks Denote Omissions.**

**EXHIBIT 99.18**

### 2007-1 POOL SUPPLEMENT (DTC ONLY)
### BANK OF AMERICA, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of April 1, 2006, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of March 8, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2007-1 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, together with any additional information relating to the Transferred Bank of America Loans heretofore provided by TERI (as origination agent) to the Servicer or FMC in connection with the subject Securitization Transaction. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 2 attached hereto.

Article 3: Representations and Warranties.

3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution

Exhibit 99.18

and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b) The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d) This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e) The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f) There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4: Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement

Exhibit 99.18

to the extent the same relate to the Transferred Bank of America Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred Bank of America Loans, and the Program Lender hereby releases any security interest it may have in such collateral. The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION


By: /s/ John A. Foxgrover
    John A. Foxgrover
    Senior Vice President

BANK OF AMERICA, N.A.


By: /s/ Elliott Lemon
    Elliott Lemon
    Vice President

THE NATIONAL COLLEGIATE FUNDING LLC


By:    GATE Holdings, Inc., Member


By: /s/ John A. Foxgrover
    John A. Foxgrover
    Vice President

Schedule 1

[Transferred Bank of America Loans]

Schedule 2

**Direct to Consumer – Prior to June 22, 2006**

Exhibit 99.18

For Transferred Bank of America Loans for which applications were received by the Program Lender prior to June 22, 2006, for purposes of this Supplement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of such Transferred Bank of America Loans to be purchased:

(a) The unpaid principal amount ([**]) of the Transferred Bank of America Loans; plus

(b) All accrued and unpaid interest on such Transferred Bank of America Loans, in accordance with the terms of the Bank of America DTC Notes [**]; plus

(c) All fees paid by the Program Lender to TERI with respect to such Transferred Bank of America Loans [**]; plus

(d) The amount of any Guaranty Fees [**]; plus

(e) A marketing fee and loan premium, [**]:

    1. With respect to K-12 Creditworthy Loans, [**]%;

    2. With respect to Continuing Education Creditworthy Loans, [**]% for [**] and [**]% for [**];

    3. With respect to Undergraduate Creditworthy Loans, [**]% for [**];[**]% for [**];[**]% for [**]; and [**]% for [**]; and

    4. With respect to Graduate Creditworthy Loans, [**]% for [**]; [**]% for [**]; [**]% for [**]; and [**]% for [**].

**Direct to Consumer – On or After June 22, 2006**

For Transferred Bank of America Loans for which applications were received by the Program Lender on or after June 22, 2006, for purposes of this Supplement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of such Transferred Bank of America Loans to be purchased:

(a) The unpaid principal amount ([**]) of the Transferred Bank of America Loans; plus

(b) All accrued and unpaid interest on such Transferred Bank of America Loans, in accordance with the terms of the Bank of America Direct to Consumer Notes (as defined in the Guaranty Agreement) [**]; plus

(c) To the extent not paid by Advanced Fees (as defined in Schedule 3.3 of the Guaranty Agreement):

    (i) [**] paid by Program Lender to TERI with respect to such Transferred Bank of America Loans [**]; plus

    (ii) The amount of any Subsequent Administrative Guaranty Fees (as defined in the Guaranty Agreement) [**]; plus

Exhibit 99.18

      (iii)  The amount of any Guaranty Fees [**]; plus

      (iv)  The amount of any Subsequent DSA Guaranty Fees (as defined in the Guaranty Agreement) [**]; plus

(d)   A marketing fee and loan premium, [**]:

     1.   with respect to Direct to Consumer K-12 Creditworthy Loans, [**]%;

     2.   with respect to Direct to Consumer Continuing Education Creditworthy Loans, [**]% for [**], and [**]% for [**];

     3.   with respect to Direct to Consumer Undergraduate Creditworthy Loans, [**]% for [**] and [**]% for [**];

     4.   with respect to Direct to Consumer Graduate Creditworthy Loans, [**]% for [**], and [**]% for [**];

     5.   with respect to Direct to Consumer Undergraduate Creditworthy Expanded Tier Loans, [**]% for [**];

     6.   with respect to Direct to Consumer Graduate Creditworthy Expanded Tier Loans, [**]% for [**]; and

     7.   with respect to Direct to Consumer Continuing Education Creditworthy Expanded Tier Loans, [**]% for [**].

(e)   MINUS any Advanced Fees (as defined in Schedule 3.3 to the Guaranty Agreement) [**].

## National Collegiate Student Loan Trust 2007-1
**Roster:** BANK OF AMERICA

| Lender | Lender Code | Marketer | Loan Product | BSSN |
|---|---|---|---|---|
| BANK OF AMERICA | 900008QC | Bank of America | DTC - Undergraduate | ████-9633 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---|---|---|---|---|
| 4565172 | 19-Dec-06 | 2 | DP | 0.04 |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|---|---|---|---|---|
| 0.055 | 0.0175 | 0.075 | $30,105.82 | $28,450.00 |

| Total Net Principal | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|---|---|---|---|---|
| $28,450.00 | $0.00 | $30,105.82 | $608.06 | $0.00 |

| | | | Final Reconciliation Settlement Figures | |
|---|---|---|---|---|
| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
| $225.00 | $2,133.75 | $0.00 | $2,133.75 | $33,072.63 |

# DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of March 8, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-1, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of March 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01.    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04. <u>Assistance by Seller</u>. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01. <u>General</u>. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02. <u>Loan Representations</u>. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on <u>Schedule B</u> attached hereto.

Section 4.03. <u>Covenants</u>. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "<u>Owner Trustee</u>") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2007-1
> c/o Wilmington Trust Company, as Owner Trustee
> Rodney Square North
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street — 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street — 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the Noteholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by

their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member


By: /s/ John A. Foxgrover
Name: John A. Foxgrover
Title: Vice President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1, as Purchaser

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee


By: /s/ Donald G. MacKelcan
Name: Donald G. MacKelcan
Title: Senior Vice President


## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated March 8, 2007, for loans that were originated under Bank of America's BAGEL Loan Program, TERI School Channel Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- Charter One Bank, N.A., dated March 8, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Astrive Education Loan Program, AstriveAlliance Education Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Education Assistance Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, ThinkFinancial Alternative Loan Program, and UPromise Alternative Loan Program, and WAMU Alternative Student Loan Program.

- Citizens Bank of Rhode Island, dated March 8, 2007, for loans that were originated under Citizens Bank

of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, Penn State Undergraduate Loan Program, FinanSure Alternative Loan Program, and Xanthus Alternative Loan Program.

- Comerica Bank, dated March 8, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated March 8, 2007, for loans that were originated under First National Bank Northeast's Nelnet Alternative Loan Program.

- HSBC Bank USA, National Association, dated March 8, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated March 8, 2007, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- InsurBanc, dated March 8, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated March 8, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated March 8, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated March 8, 2007, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- National City Bank, dated March 8, 2007, for loans that were originated under National City Bank's Alternative Loan Program.

- National City Bank, dated March 8, 2007, for loans that were originated under National City Bank's Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated March 8, 2007, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Program, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated March 8, 2007, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 8, 2007, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated March 8, 2007, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank National Association, dated March 8, 2007, for loans that were originated under U.S Bank's Alternative Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education Loan Programs.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Alternative Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan

Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Alternative Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under National City Bank's Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Program, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank National Association, dated May 1, 2005, for loans that were originated under U.S Bank's Alternative Loan Program.

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/19/06 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI - DTC            CUST ACCT: LT12  ORIG BAL:  30,105.82
BOND ISSUE: NCT20071  PD AHEAD:   STATUS: ACTIVE     CURR BAL:     0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 07/06/12 | 07/06/12 | 5003A | 30.00CR | 0.00 | 0.00 |
| 2 | | 07/02/12 | 07/02/12 | 1030A | 41,147.19CR | 92.66 | 0.00 |
| 3 | | 06/12/12 | | 2601A | 5.00 | 139.00 | 39,996.15 |
| 4 | | 05/13/12 | | 2601A | 5.00 | 143.63 | 39,996.15 |
| 5 | | 04/12/12 | | 2601A | 5.00 | 134.76 | 39,996.15 |
| 6 | | 03/14/12 | | 2601A | 5.00 | 145.10 | 39,996.15 |
| 7 | | 02/12/12 | | 2601A | 5.00 | 145.01 | 39,996.15 |
| 8 | | 01/12/12 | | 2601A | 5.00 | 163.09 | 39,996.15 |
| 9 | | 12/08/11 | 12/08/11 | 1010C | 71.49CR | 190.48 | 39,996.15 |
| 10 | | 10/28/11 | 10/28/11 | 1010C | 56.05CR | 124.85 | 39,996.15 |

```
       SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/19/06 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI - DTC            CUST ACCT: LT12  ORIG BAL: 30,105.82
BOND ISSUE: NCT20071  PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 10/01/11       | 10/03/11    | 7001A     | 0.00        | 417.98           | 39,996.15         |
| 2  |         | 07/01/11       | 08/17/11    | 7001A     | 0.00        | 354.79           | 39,578.17         |
| 3  |         | 04/14/11       | 04/14/11    | 7001A     | 0.00        | 118.66           | 39,223.38         |
| 4  |         | 03/19/11       | 04/13/11    | 7001A     | 0.00        | 348.29           | 39,104.72         |
| 5  |         | 01/01/11       | 01/03/11    | 7001A     | 0.00        | 411.40           | 38,756.43         |
| 6  |         | 10/01/10       | 10/01/10    | 7001A     | 0.00        | 365.13           | 38,345.03         |
| 7  |         | 07/12/10       | 07/13/10    | 1010C     | 23.37CR     | 49.75            | 37,953.52         |
| 8  |         | 07/01/10       | 07/01/10    | 7001A     | 0.00        | 398.24           | 37,953.52         |
| 9  |         | 04/01/10       | 04/01/10    | 7001A     | 0.00        | 387.97           | 37,555.28         |
| 10 |         | 01/01/10       | 02/17/10    | 7001A     | 0.00        | 393.92           | 37,167.31         |

        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/19/06 LN SEQ: 0003  LN PGM: ALPLN   OWN: 122962QC-NCT
GUARANTOR: TERI - DTC          CUST ACCT: LT12  ORIG BAL:  30,105.82
BOND ISSUE: NCT20071  PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00
```

|    | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|----|-----|----------|----------|-------|-------|---------|-----------|
| 1  |     | 10/01/09 | 02/17/10 | 7001A | 0.00  | 128.90  | 36,773.39 |
| 2  |     | 09/01/09 | 02/17/10 | 7001A | 0.00  | 133.64  | 36,644.49 |
| 3  |     | 08/01/09 | 02/17/10 | 7001A | 0.00  | 405.78  | 36,510.85 |
| 4  |     | 04/30/09 | 02/17/10 | 7001A | 0.00  | 150.32  | 36,105.07 |
| 5  |     | 03/27/09 | 02/17/10 | 7001A | 0.00  | 524.42  | 35,954.75 |
| 6  |     | 12/14/08 | 05/19/09 | 7001A | 0.00  | 500.68  | 35,430.33 |
| 7  |     | 10/01/08 | 10/01/08 | 7001A | 0.00  | 558.13  | 34,929.65 |
| 8  |     | 07/01/08 | 07/01/08 | 7001A | 0.00  | 577.09  | 34,371.52 |
| 9  |     | 04/01/08 | 04/01/08 | 7001A | 0.00  | 684.96  | 33,794.43 |
| 10 |     | 01/01/08 | 01/02/08 | 7001A | 0.00  | 750.44  | 33,109.47 |

```
    SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
BORROWER SSN: ***-**-9633  NAME: DITCHING, JANELLE Z
1ST DISB: 12/19/06 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI - DTC           CUST ACCT: LT12  ORIG BAL: 30,105.82
BOND ISSUE: NCT20071  PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 10/01/07 | 10/01/07 | 7001A | 0.00 | 742.71 | 32,359.03 |
| 2 | | 07/01/07 | 07/02/07 | 7001A | 0.00 | 717.95 | 31,616.32 |
| 3 | | 04/01/07 | 04/02/07 | 7001A | 0.00 | 184.49 | 30,898.37 |
| 4 | | 03/08/07 | 03/08/07 | 0390A | 30,713.88 | 0.00 | 30,105.82 |
| 5 | | 03/08/07 | 03/08/07 | 0395A | 30,713.88CR | 608.06 | 0.00 |
| 6 | | 12/19/06 | 12/19/06 | 0101A | 30,105.82 | 0.00 | 30,105.82 |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: ***-**-9633 NAME: JANELLE Z DITCHING
1ST DISB DATE: 12/19/06    OWNER: NCT                    LOAN PGM: ALPLN
LOAN SEQ: 003          GUARANTOR: TERI - DTC

MORE:   +

| DEFER/FORB TYP | BEGIN DATE | END DATE | GRACE END DATE | CAP IND | DAYS USED | DAYS LEFT | TOTL MOS USED | CERT DATE |
|---|---|---|---|---|---|---|---|---|
| _ F - GEN/TEMP | 07 01 11 | 09 30 11 | | Y | 92 | 89 | 9.1 | 08 17 11 |
| _ F - GEN/TEMP | 05 01 11 | 06 30 11 | | Y | 61 | 89 | 9.1 | 06 23 11 |
| _ F - LAT SCH NT | 03 19 11 | 04 13 11 | | Y | 26 | UNL | 2.0 | 04 04 11 |
| _ D - SCHL FULL | 09 30 09 | 03 18 11 | | Y | 535 | 1209 | 20.2 | 05 17 10 |
| _ F - GEN/TEMP | 08 01 09 | 08 31 09 | | Y | 31 | 89 | 9.1 | 08 04 09 |
| _ F - GEN/TEMP | 05 01 09 | 07 31 09 | | Y | 92 | 89 | 9.1 | 05 18 09 |
| _ F - LAT SCH NT | 03 27 09 | 04 29 09 | | Y | 34 | UNL | 2.0 | 04 17 09 |

F1=HELP   F3=EXIT   F5=RFR   F6=ELG   F7=BKWD   F8=FWD   F9=PRT   F10=HIST   F12=CAN

DATE 12/21/17 15:46:45 DEFERMENT/FORBEARANCE LOAN DETAIL


BORROWER SSN: ████9633 NAME: JANELLE Z DITCHING
1ST DISB DATE: 12/19/06   OWNER: NCT                    LOAN PGM: ALPLN
LOAN SEQ: 003         GUARANTOR: TERI - DTC


                                                              MORE: -
                                                        TOTL
                    BEGIN    END     GRACE    CAP  DAYS  DAYS  MOS    CERT
      DEFER/FORB TYP DATE    DATE  END DATE  IND  USED  LEFT  USED   DATE
      D - SCHL HALF  01 05 09 03 26 09          Y    81  1209  20.2  04 17 09










      F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN

BORROWER SSN ***-**-9633   NAME JANELLE Z DITCHING

```
        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE     PGM      OWNER
  1 ****************************************************************
  2 ****************************************************************
  3 I   TG      127.54      4     228  11/13/11 12/19/06 ALPLN      NCT
  4 ****************************************************************
  5 ****************************************************************
  6 ****************************************************************
  7 I   TG      124.91      4     231  07/14/11 12/19/06 ALPLN      NCT
  8 ****************************************************************
  9 I   L       247.72      2     233  05/14/11 12/19/06 ALPLN      NCT
 10 ****************************************************************
 11 ****************************************************************
 12 ****************************************************************
```

SELECTION   __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN ***-**-9633    NAME JANELLE Z DITCHING


         SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE      PGM      OWNER
  1 *********************************************************************
  2 *********************************************************************
  3 I   L       232.09      2     234   10/13/09 12/19/06 ALPLN      NCT
  4 *********************************************************************
  5 I   L       232.63      2     235   09/13/09 12/19/06 ALPLN      NCT
  6 *********************************************************************
  7 *********************************************************************
  8 I   L       253.66      2     239   02/13/09 12/19/06 ALPLN      NCT
  9 *********************************************************************
 10 I   L       264.81      2     239   01/27/09 12/19/06 ALPLN      NCT
 11 *********************************************************************
 12 *********************************************************************


SELECTION  __



F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN ***-**-9633    NAME JANELLE Z DITCHING

```
        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
 SEL STA TYPE   AMOUNT   LVLS   TERM    DATE    DATE      PGM      OWNER
   1  ********************************************************************
   2  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
   0  ********************************************************************
```

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN



**American Education Services**
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

APRIL 14, 2011

#BWNDHKB
#B088 4900 0604 14L2#
JANELLE Z DITCHING
    12TH AVE NW
SEATTLE WA  98117-2231

**ACCT NUMBER:** ████1915

---

**THIS LETTER IS FOR YOUR INFORMATION ONLY.**

**WHY WE ARE CONTACTING YOU**
Based on enrollment information we recently received, changes were made to the separation date, deferments, and/or forbearances on your education loan(s). Please refer to the SCHOOL ENROLLMENT STATUS CHANGE LOAN DECLARATION for complete details regarding the changes that were made.

**ADDITIONAL INFORMATION YOU MAY FIND HELPFUL**

| If: | Then: |
|---|---|
| a deferment was granted/adjusted on a FFELP loan(s)... | ...you will be billed for the accrued interest on loans that are not federally subsidized. If you choose not to pay the interest, it will be *capitalized*\*(added to the principal balance of the loan) in accordance with the terms of your promissory note(s). Capitalized interest may increase your monthly payment amount. |
|  | ...you retain the option to cancel the deferment on your loan(s). If you cancel the deferment, any outstanding interest will be *capitalized*\*and your loan(s) will be set up for immediate repayment. |
| a deferment was granted/adjusted on an Alternative loan(s)... | ...the interest may be *capitalized*\*or billed in accordance with the terms of the loan. |
|  | ...you retain the option to cancel the deferment on your loan(s). If you cancel the deferment, your loan(s) will be set up for immediate repayment. |
| a deferment or forbearance was ended on your loan(s)... | ...repayment will resume within 60 days of the new end date. |
| a deferment or forbearance was ended on your loan(s) and you had been using Direct Debit, our automatic payment service, prior to the deferment or forbearance... | ...we will resume automatically withdrawing your payments from your bank account. Please notify us immediately if you no longer wish for your payments to be debited from your bank account or if your account information changed during the deferment/forbearance period. |
| you feel the enrollment information in incorrect... | ...in most cases we will automatically receive the new enrollment information that will correct the status of your loan(s). Please allow up to 4 weeks for us to receive and process new information. |
| you cease to be enrolled at least half-time... | ...any anticipated disbursements may be cancelled. |



TSXP8:PS06BSAPPM
████1915 ████1915    MR 00090111030002351

## *WHAT IS CAPITALIZATION?

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your unsubsidized loan(s) during periods of deferment. If you fail to make required interest payments before the resumption of principal repayment, the lender may capitalize such interest. The principal balance of your loan(s) will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When your deferment ends and you begin repaying your loan(s), your monthly payment amount will be higher or, if your loan(s) is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on loans where interest is paid during the deferment and loans where the interest is capitalized. This example uses an interest rate of 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $ 0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

* Total amount repaid includes $1,238 of interest paid by the borrower during the deferment.

Result: During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

APRIL 14, 2011

**AES**
**SCHOOL ENROLLMENT STATUS CHANGE LOAN DECLARATION**

ACCOUNT NUMBER: **31 5907 1915**    NAME:    **JANELLE Z DITCHING**

<u>**NEW ENROLLMENT STATUS**</u>
SCHOOL                : UNIV OF WASHINGTON
SEPARATION DATE       : 03/18/11
SEPARATION REASON     : OUT OF SCHOOL
SEPARATION SOURCE     : CH-CLEARINGHOUSE
DATE NOTIFIED         : 04/13/11

LISTED BELOW ARE THE LOANS THAT WERE AFFECTED BY THE ABOVE REQUESTED SCHOOL
ENROLLMENT STATUS CHANGE. AS A RESULT, YOUR REPAYMENT START DATE MAY HAVE
CHANGED AND DEFERMENT OR FORBEARANCES MAY HAVE BEEN EITHER APPLIED TO YOUR
LOAN OR MODIFIED.

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | CURRENT PRINCIPAL | REPAYMENT DATE |
|---|---|---|---|---|
| ALPLN | NCT | 12/19/06 | $39,163.53 | 12/14/08 |

<u>ACTION</u>

CHANGED D-FULL TIME SCHOOL DEFERMENT.  NEW DATES ARE 09/30/09 TO 03/18/11
ADDED F-LATE SCHL NOTIFICA FORBEARANCE FROM 03/19/11 TO 04/13/11

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | CURRENT PRINCIPAL | REPAYMENT DATE |
|---|---|---|---|---|
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | | | | |

<u>ACTION</u>

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



TSXP8:PS06BSAPPM
▇▇▇▇1915 ▇▇▇▇1915        MR 00090111030002351


# National™ Collegiate Trust

**American Education Services**
Harrisburg, PA 17130-0001
Toll-free 1-800-649-6034 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

MAY 14, 2012

#BWNDHKB
#B088 4900 0605 14L1#
JANELLE Z DITCHING
███ 12TH AVE NW
SEATTLE WA 98117-2231



ACCT NUMBER: ████1915



DEAR JANELLE Z DITCHING:

You are now at least 150 days past due on your student loan. In accordance with the terms of your loan agreement, the entire principal balance and accrued interest will soon be due in full unless you act. If you pay the TOTAL PAST DUE AMOUNT FOR ALL LOANS by the DUE DATE (each listed on reverse of this letter), you may continue with your contract. If you do not pay the total amount due by this date, we may exercise our rights under the law.

You may be obligated to pay reasonable costs of collection, including but not limited to court costs, attorney fees and collection agency fees as allowable under applicable law, and the account(s) will be sent to a recovery agency and reviewed for legal action.

To avoid these steps, please make your payment through one of the following methods:

**MAKE PAYMENTS THROUGH THE MAIL:**
- ☐ Include your account number, 31 5907 1915, on the check or money order.
- ☐ Send the payment to:  American Education Services
  Harrisburg, PA 17130-0001

**MAKE PAYMENTS ONLINE AT:**    www.aesSuccess.org

**MAKE TELEPHONE PAYMENTS AT:**    1-800-649-6034

If you are unable to pay the full delinquent amount, please contact our office at 1-800-649-6034. Our representatives may be able to assist you in bringing the account(s) current. Our business hours are Monday through Friday, from 7:30 a.m., to 9 p.m., ET.

American Education Services
COLLECTIONS DEPARTMENT

P.S. Call 1-800-649-6034 to avoid additional collection calls and further damage to your credit history. We may have helpful ways to bring the account(s) current.

TDXGN3:PS09BFDLP3
████1915 ████ 1915 MR    00115121330008998



## LOAN INFORMATION

| LOAN SEQ | LOAN PROGRAM | DISBURSEMENT DATE | LENDER NAME | DUE DATE | LATE FEE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| 0003 | ALPLN | 12/19/2006 | BANK OF AMERICA | 06/11/2012 | $20.00 | $41,054.53 |
| | | | TOTAL DUE FOR ALL LOANS (including late fees) | | | $80,471.90 |



# National Collegiate Trust™

AUGUST 18, 2011

American Education Services
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

#BWNDHKB
#B088 4900 0608 18L4#
JANELLE Z DITCHING
9220 12TH AVE NW
SEATTLE WA 98117-2231

ACCT NUMBER: ▮▮▮▮1915

---

**PLEASE READ THE FOLLOWING INFORMATION CAREFULLY
TO DETERMINE WHETHER YOU NEED TO TAKE ACTION.**

---

**WHY WE ARE CONTACTING YOU**
To remind you that the forbearance period on your loan(s) will soon expire.

**WHAT THIS MEANS TO YOU**
Your loan(s) listed on the reverse side of this letter will be due for payments within 60 days of the forbearance end date.

**WHAT ACTIONS YOU NEED TO TAKE**

| If you: | Then: |
|---|---|
| Had been using our automatic payment service, Direct Debit... | ...this service will automatically resume and your payments will be withdrawn from your bank account. Please notify us immediately if you no longer wish your payments to be automatically debited, or if your bank account information has changed during the forbearance period. |
| Had NOT been using our automatic payment service, Direct Debit... | ...no action is necessary. You will be sent a billing statement 20 days prior to your due date. |
| If you had been making payments on an Income Based Repayment schedule before the application of the forbearance and feel you qualify for a Partial Financial Hardship payment... | ...please call our office to request the necessary forms or download them at www.aessuccess.org. |



TSXF5:PS06BF601
▮▮▮1915 ▮▮▮1915 MR          0001011229000l926

## LOAN INFORMATION

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | FORBEARANCE END DATE |
|---|---|---|---|
| ALPLN | NCT | 12/19/2006 | 09/30/2011 |

# Loan Payment History Report
## Date: 2017-12-21

| | | | |
|---|---|---|---|
| Account Number: | ███9633/003-001000 | | |
| Social Security Number: | ███9633 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | DITCHING, JANELLE | Officer Code: | 777071 |
| Birth Date: | 1982-███ | School: | UNIVERSITY OF WASHINGTON |
| Address 1: | C/O WOTIPKA RICHARD J | Program Year: | |
| Address 2: | 707 EAST HARRISON | | |
| City: | SEATTLE | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | WA | Interest Rate: | 0.00% |
| Zip Code: | 98102 | | |
| Cosigner Name: | DITCHING, PAULINE | | |
| Social Security Number: | ███7553 | | |
| Address 1: | 2338 NW MULHOLLAND BLVD | | |
| Address 2: | | | |
| City: | POULSBO | | |
| State: | WA | | |
| Zip Code: | 98370-9560 | | |
| | | Last Payment Date: | 2011-12-08 |
| | | Last Payment Amount: | $71.49 |
| Contract Date: | 2006-12-19 | Last Interest Date: | 2017-12-21 |
| Vendor Placement Date: | 2017-11-21 | Accrued Interest: | $9,634.81 |
| Charge Off Date: | 2012-07-02 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $41,147.19 | Net Interest: | $9,634.81 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Current Principal: | $41,147.19 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2006-12-19 | Net Costs: | $0.00 |
| Disbursement Amount: | $30,105.82 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2012-07-31 | 00:01 | 82 | $41,147.19 @ 4.240 / 07/02/2012 - 07/31/2012 | $138.24 |
| System | 2012-08-01 | 00:01 | 82 | $41,147.19 @ 4.240 / 07/31/2012 - 08/01/2012 | $4.77 |
| System | 2012-08-31 | 00:01 | 82 | $41,147.19 @ 4.250 / 08/01/2012 - 08/31/2012 | $143.34 |
| System | 2012-09-04 | 00:01 | 82 | $41,147.19 @ 4.250 / 08/31/2012 - 09/04/2012 | $19.11 |
| System | 2012-09-30 | 00:01 | 82 | $41,147.19 @ 4.250 / 09/04/2012 - 09/30/2012 | $124.23 |
| System | 2012-10-01 | 00:01 | 82 | $41,147.19 @ 4.250 / 09/30/2012 - 10/01/2012 | $4.78 |
| System | 2012-10-31 | 00:01 | 82 | $41,147.19 @ 4.230 / 10/01/2012 - 10/31/2012 | $142.67 |

| System | 2012-11-09 | 00:01 | 82 | $41,147.19 @ 4.230 / 10/31/2012 - 11/09/2012 | $42.80 |
|--------|------------|-------|----|----------------------------------------------|--------|
| System | 2012-11-13 | 00:01 | 82 | $41,147.19 @ 4.210 / 11/09/2012 - 11/13/2012 | $18.93 |
| System | 2012-12-03 | 00:01 | 82 | $41,147.19 @ 4.210 / 11/13/2012 - 12/03/2012 | $94.66 |
| System | 2012-12-11 | 00:01 | 82 | $41,147.19 @ 4.210 / 12/03/2012 - 12/11/2012 | $37.86 |
| System | 2012-12-31 | 00:01 | 82 | $41,147.19 @ 4.210 / 12/11/2012 - 12/31/2012 | $94.66 |
| System | 2013-01-31 | 00:01 | 82 | $41,147.19 @ 4.210 / 12/31/2012 - 01/31/2013 | $147.13 |
| System | 2013-02-01 | 00:01 | 82 | $41,147.19 @ 4.210 / 01/31/2013 - 02/01/2013 | $4.75 |
| System | 2013-02-06 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/01/2013 - 02/06/2013 | $23.73 |
| System | 2013-02-08 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/06/2013 - 02/08/2013 | $9.49 |
| System | 2013-02-11 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/08/2013 - 02/11/2013 | $14.24 |
| System | 2013-02-12 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/11/2013 - 02/12/2013 | $4.75 |
| System | 2013-02-13 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/12/2013 - 02/13/2013 | $4.75 |
| System | 2013-02-18 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/13/2013 - 02/18/2013 | $23.73 |
| System | 2013-02-28 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/18/2013 - 02/28/2013 | $47.46 |
| System | 2013-03-01 | 00:01 | 82 | $41,147.19 @ 4.210 / 02/28/2013 - 03/01/2013 | $4.75 |
| System | 2013-03-31 | 00:01 | 82 | $41,147.19 @ 4.200 / 03/01/2013 - 03/31/2013 | $142.04 |
| System | 2013-04-30 | 00:01 | 82 | $41,147.19 @ 4.200 / 03/31/2013 - 04/30/2013 | $142.04 |
| System | 2013-05-31 | 00:01 | 82 | $41,147.19 @ 4.200 / 04/30/2013 - 05/31/2013 | $146.78 |
| System | 2013-06-30 | 00:01 | 82 | $41,147.19 @ 4.200 / 05/31/2013 - 06/30/2013 | $142.04 |
| System | 2013-07-04 | 00:01 | 82 | $41,147.19 @ 4.200 / 06/30/2013 - 07/04/2013 | $18.94 |
| System | 2013-07-31 | 00:01 | 82 | $41,147.19 @ 4.190 / 07/04/2013 - 07/31/2013 | $127.53 |
| System | 2013-08-02 | 00:01 | 82 | $41,147.19 @ 4.190 / 07/31/2013 - 08/02/2013 | $9.45 |
| System | 2013-08-31 | 00:01 | 82 | $41,147.19 @ 4.190 / 08/02/2013 - 08/31/2013 | $136.98 |
| System | 2013-09-30 | 00:01 | 82 | $41,147.19 @ 4.190 / 08/31/2013 - 09/30/2013 | $141.70 |
| System | 2013-10-09 | 00:01 | 82 | $41,147.19 @ 4.190 / 09/30/2013 - 10/09/2013 | $42.51 |
| System | 2013-10-31 | 00:01 | 82 | $41,147.19 @ 4.180 / 10/09/2013 - 10/31/2013 | $103.67 |
| System | 2013-11-30 | 00:01 | 82 | $41,147.19 @ 4.180 / 10/31/2013 - 11/30/2013 | $141.37 |
| System | 2013-12-04 | 00:01 | 82 | $41,147.19 @ 4.180 / 11/30/2013 - 12/04/2013 | $18.85 |
| System | 2013-12-31 | 00:01 | 82 | $41,147.19 @ 4.170 / 12/04/2013 - 12/31/2013 | $126.92 |
| System | 2014-01-31 | 00:01 | 82 | $41,147.19 @ 4.170 / 12/31/2013 - 01/31/2014 | $145.73 |
| System | 2014-02-04 | 00:01 | 82 | $41,147.19 @ 4.170 / 01/31/2014 - 02/04/2014 | $18.80 |
| System | 2014-02-28 | 00:01 | 82 | $41,147.19 @ 4.170 / 02/04/2014 - 02/28/2014 | $112.82 |
| System | 2014-04-03 | 00:01 | 82 | $41,147.19 @ 4.170 / 02/28/2014 - 04/03/2014 | $159.83 |
| System | 2014-05-07 | 00:01 | 82 | $41,147.19 @ 4.160 / 04/03/2014 - 05/07/2014 | $159.45 |
| System | 2014-05-21 | 00:01 | 82 | $41,147.19 @ 4.150 / 05/07/2014 - 05/21/2014 | $65.50 |
| System | 2014-07-31 | 00:01 | 82 | $41,147.19 @ 4.150 / 05/21/2014 - 07/31/2014 | $332.16 |
| System | 2014-08-07 | 00:01 | 82 | $41,147.19 @ 4.150 / 07/31/2014 - 08/07/2014 | $32.75 |
| System | 2014-08-31 | 00:01 | 82 | $41,147.19 @ 4.150 / 08/07/2014 - 08/31/2014 | $112.28 |
| System | 2014-09-02 | 00:01 | 82 | $41,147.19 @ 4.150 / 08/31/2014 - 09/02/2014 | $9.36 |
| System | 2014-09-30 | 00:01 | 82 | $41,147.19 @ 4.160 / 09/02/2014 - 09/30/2014 | $131.31 |
| System | 2014-10-01 | 00:01 | 82 | $41,147.19 @ 4.160 / 09/30/2014 - 10/01/2014 | $4.69 |
| System | 2014-10-21 | 00:00 | 34 | SVS OF PROCESS | $57.50 |
| System | 2014-10-21 | 00:01 | 82 | $41,147.19 @ 4.160 / 10/01/2014 - 10/21/2014 | $93.79 |
| System | 2014-10-31 | 00:01 | 82 | $41,147.19 @ 4.160 / 10/21/2014 - 10/31/2014 | $46.90 |
| System | 2014-11-30 | 00:01 | 82 | $41,147.19 @ 4.160 / 10/31/2014 - 11/30/2014 | $140.69 |
| System | 2014-12-31 | 00:01 | 82 | $41,147.19 @ 4.160 / 11/30/2014 - 12/31/2014 | $145.38 |
| System | 2015-01-05 | 00:01 | 82 | $41,147.19 @ 4.160 / 12/31/2014 - 01/05/2015 | $23.45 |
| System | 2015-01-31 | 00:01 | 82 | $41,147.19 @ 4.150 / 01/05/2015 - 01/31/2015 | $121.64 |

| System | 2015-02-03 | 00:01 | 82 | $41,147.19 @ 4.150 / 01/31/2015 - 02/03/2015 | $14.04 |
|--------|------------|-------|-----|--------------------------------------------|--------|
| System | 2015-02-28 | 00:01 | 82 | $41,147.19 @ 4.170 / 02/03/2015 - 02/28/2015 | $117.52 |
| System | 2015-03-31 | 00:01 | 82 | $41,147.19 @ 4.170 / 02/28/2015 - 03/31/2015 | $145.73 |
| System | 2015-04-30 | 00:01 | 82 | $41,147.19 @ 4.170 / 03/31/2015 - 04/30/2015 | $141.03 |
| System | 2015-05-01 | 00:01 | 82 | $41,147.19 @ 4.170 / 04/30/2015 - 05/01/2015 | $4.70 |
| System | 2015-05-31 | 00:01 | 82 | $41,147.19 @ 4.180 / 05/01/2015 - 05/31/2015 | $141.37 |
| System | 2015-06-30 | 00:01 | 82 | $41,147.19 @ 4.180 / 05/31/2015 - 06/30/2015 | $141.37 |
| System | 2015-07-31 | 00:01 | 82 | $41,147.19 @ 4.180 / 06/30/2015 - 07/31/2015 | $146.08 |
| System | 2015-08-03 | 00:01 | 82 | $41,147.19 @ 4.180 / 07/31/2015 - 08/03/2015 | $14.14 |
| System | 2015-08-31 | 00:01 | 82 | $41,147.19 @ 4.190 / 08/03/2015 - 08/31/2015 | $132.26 |
| System | 2015-09-30 | 00:01 | 82 | $41,147.19 @ 4.190 / 08/31/2015 - 09/30/2015 | $141.70 |
| System | 2015-10-01 | 00:01 | 82 | $41,147.19 @ 4.190 / 09/30/2015 - 10/01/2015 | $4.72 |
| System | 2015-11-04 | 00:01 | 82 | $41,147.19 @ 4.200 / 10/01/2015 - 11/04/2015 | $160.98 |
| System | 2015-11-05 | 00:01 | 82 | $41,147.19 @ 4.200 / 11/04/2015 - 11/05/2015 | $4.73 |
| System | 2015-12-11 | 00:00 | 34 | SVS OF PROCESS | $67.50 |
| System | 2015-12-11 | 00:01 | 82 | $41,147.19 @ 4.190 / 11/05/2015 - 12/11/2015 | $170.04 |
| System | 2015-12-31 | 00:01 | 82 | $41,147.19 @ 4.190 / 12/11/2015 - 12/31/2015 | $94.47 |
| System | 2016-01-01 | 00:01 | 82 | $41,147.19 @ 4.190 / 12/31/2015 - 01/01/2016 | $4.71 |
| System | 2016-01-31 | 00:01 | 82 | $41,147.19 @ 4.240 / 01/01/2016 - 01/31/2016 | $143.00 |
| System | 2016-02-01 | 00:01 | 82 | $41,147.19 @ 4.240 / 01/31/2016 - 02/01/2016 | $4.77 |
| System | 2016-02-29 | 00:01 | 82 | $41,147.19 @ 4.430 / 02/01/2016 - 02/29/2016 | $139.45 |
| System | 2016-03-31 | 00:01 | 82 | $41,147.19 @ 4.430 / 02/29/2016 - 03/31/2016 | $154.39 |
| System | 2016-04-01 | 00:01 | 82 | $41,147.19 @ 4.430 / 03/31/2016 - 04/01/2016 | $4.98 |
| System | 2016-04-30 | 00:01 | 82 | $41,147.19 @ 4.427 / 04/01/2016 - 04/30/2016 | $144.33 |
| System | 2016-05-02 | 00:01 | 82 | $41,147.19 @ 4.427 / 04/30/2016 - 05/02/2016 | $9.95 |
| System | 2016-05-31 | 00:01 | 82 | $41,147.19 @ 4.440 / 05/02/2016 - 05/31/2016 | $144.76 |
| System | 2016-06-30 | 00:01 | 82 | $41,147.19 @ 4.440 / 05/31/2016 - 06/30/2016 | $149.75 |
| System | 2016-07-01 | 00:01 | 82 | $41,147.19 @ 4.440 / 06/30/2016 - 07/01/2016 | $4.99 |
| System | 2016-08-01 | 00:01 | 82 | $41,147.19 @ 4.470 / 07/01/2016 - 08/01/2016 | $155.79 |
| System | 2016-08-31 | 00:01 | 82 | $41,147.19 @ 4.470 / 08/01/2016 - 08/31/2016 | $150.76 |
| System | 2016-09-01 | 00:01 | 82 | $41,147.19 @ 4.470 / 08/31/2016 - 09/01/2016 | $5.03 |
| System | 2016-09-30 | 00:01 | 82 | $41,147.19 @ 4.500 / 09/01/2016 - 09/30/2016 | $146.71 |
| System | 2016-10-01 | 00:01 | 82 | $41,147.19 @ 4.500 / 09/30/2016 - 10/01/2016 | $5.06 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-66.35 |
| System | 2016-10-08 | 00:01 | 82 | $41,147.19 @ 4.520 / 10/01/2016 - 10/08/2016 | $35.57 |
| System | 2016-10-31 | 00:01 | 82 | $41,147.19 @ 4.520 / 10/08/2016 - 10/31/2016 | $116.88 |
| System | 2016-11-01 | 00:01 | 82 | $41,147.19 @ 4.520 / 10/31/2016 - 11/01/2016 | $5.08 |
| System | 2016-11-30 | 00:01 | 82 | $41,147.19 @ 4.530 / 11/01/2016 - 11/30/2016 | $147.69 |
| System | 2016-12-31 | 00:01 | 82 | $41,147.19 @ 4.530 / 11/30/2016 - 12/31/2016 | $157.88 |
| System | 2017-01-01 | 00:01 | 82 | $41,147.19 @ 4.530 / 12/31/2016 - 01/01/2017 | $5.11 |
| System | 2017-01-31 | 00:01 | 82 | $41,147.19 @ 4.620 / 01/01/2017 - 01/31/2017 | $156.25 |
| System | 2017-02-01 | 00:01 | 82 | $41,147.19 @ 4.620 / 01/31/2017 - 02/01/2017 | $5.21 |
| System | 2017-02-28 | 00:01 | 82 | $41,147.19 @ 4.770 / 02/01/2017 - 02/28/2017 | $145.19 |
| System | 2017-03-01 | 00:01 | 82 | $41,147.19 @ 4.770 / 02/28/2017 - 03/01/2017 | $5.38 |
| System | 2017-03-31 | 00:01 | 82 | $41,147.19 @ 4.780 / 03/01/2017 - 03/31/2017 | $161.66 |
| System | 2017-04-01 | 00:00 | 39 | COST ADJUSTMENT | $-125.00 |
| System | 2017-04-01 | 00:01 | 82 | $41,147.19 @ 4.780 / 03/31/2017 - 04/01/2017 | $5.39 |
| System | 2017-04-30 | 00:01 | 82 | $41,147.19 @ 4.790 / 04/01/2017 - 04/30/2017 | $156.60 |

| System | 2017-05-01 | 00:01 | 82 | $41,147.19 @ 4.790 / 04/30/2017 - 05/01/2017 | $5.40 |
|--------|------------|-------|----|----------------------------------------------|--------|
| System | 2017-05-31 | 00:01 | 82 | $41,147.19 @ 4.980 / 05/01/2017 - 05/31/2017 | $168.42 |
| System | 2017-06-01 | 00:01 | 82 | $41,147.19 @ 4.980 / 05/31/2017 - 06/01/2017 | $5.61 |
| System | 2017-06-30 | 00:01 | 82 | $41,147.19 @ 5.000 / 06/01/2017 - 06/30/2017 | $163.46 |
| System | 2017-07-01 | 00:01 | 82 | $41,147.19 @ 5.000 / 06/30/2017 - 07/01/2017 | $5.64 |
| System | 2017-07-21 | 00:00 | 33 | FILE SUMMONS&COM | $240.40 |
| System | 2017-07-21 | 00:01 | 82 | $41,147.19 @ 5.060 / 07/01/2017 - 07/21/2017 | $114.08 |
| System | 2017-07-31 | 00:01 | 82 | $41,147.19 @ 5.060 / 07/21/2017 - 07/31/2017 | $57.04 |
| System | 2017-08-01 | 00:01 | 82 | $41,147.19 @ 5.060 / 07/31/2017 - 08/01/2017 | $5.70 |
| System | 2017-08-31 | 00:01 | 82 | $41,147.19 @ 5.220 / 08/01/2017 - 08/31/2017 | $176.54 |
| System | 2017-09-01 | 00:01 | 82 | $41,147.19 @ 5.220 / 08/31/2017 - 09/01/2017 | $5.88 |
| System | 2017-09-30 | 00:01 | 82 | $41,147.19 @ 5.230 / 09/01/2017 - 09/30/2017 | $170.98 |
| System | 2017-10-31 | 00:01 | 82 | $41,147.19 @ 5.230 / 09/30/2017 - 10/31/2017 | $182.77 |
| System | 2017-11-21 | 00:00 | 44 | Interest Adjustment | $-47.17 |
| System | 2017-11-21 | 00:01 | 82 | $41,147.19 @ 5.230 / 10/31/2017 - 11/21/2017 | $123.81 |
| System | 2017-12-06 | 00:00 | 33 | MOTION FEES | $30.40 |
| System | 2017-12-06 | 00:01 | 82 | $41,147.19 @ 0.000 / 11/21/2017 - 12/06/2017 | $0.00 |
| System | 2017-12-21 | 00:01 | 82 | $41,147.19 @ 0.000 / 12/06/2017 - 12/21/2017 | $0.00 |